J. A. JONES CONSTRUCTION
COMPANY et al., Plaintiffs,

v.

CITY OF DOVER, a Municipal Corpora-
tion of the State of Delaware, Defend-
ant-Third-Party Plaintiff,

v.

GENERAL ELECTRIC COMPANY, a New
York Corporation, and Westinghouse
Electric Corporation, a Pennsylvania
Corporation, et al., Third-Party Defend-
ants.

CHAS. E. BROHAWN & BROS., INC., a
Maryland Corporation, Third-Party
Defendant-Fourth-Party Plaintiff,

v.

GEORGE CONCRETE CO., a Delaware
Corporation, Fourth-Party Defendant.

Superior Court of Delaware,
New Castle.

Submitted Sept. 17, 1976.

Final Submission Jan. 24, 1977.

Decided Feb. 28, 1977.

Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, and C. Richard Rayburn, Jr. of Fleming, Robinson & Bradshaw, Charlotte, N. C., of counsel, for plaintiff.

Nicholas H. Rodriguez, of Schmittinger & Rodriguez, Dover, for defendant and third party plaintiff City of Dover.

Stuart B. Young, of Young, Conaway, Stargatt & Taylor, Wilmington, for third party defendants General Elec. Co. and Federal Ins. Co.

Edward R. McNamara, of Brown, Shiels & Barros, Dover, for third party defendants Fischer & Porter of Warminister, Pa., and United Pacific Ins.

John R. Bowman, of Connolly, Bove & Lodge, Wilmington, for third party defendant Riley-Stoker Corp.

Stephen E. Herrmann, of Richards, Layton & Finger, Wilmington, for third party defendant Westinghouse Elec. Corp.

James W. Semple, of Flanzer & Isaacs, Wilmington, for third party defendant Laramore, Douglass & Popham of New York, Inc.

Daniel F. Wolcott, Jr., of Potter, Anderson & Corroon, Wilmington, for third party defendant Employers Commercial Union Ins. Co. and third party defendant, fourth party plaintiff Chas. E. Brohawn & Bros., Inc.

N. Maxson Terry, Jr., of Terry, Terry & Jackson, Dover, attorney for fourth party defendant George Concrete Co.

Henry J. Ridgely, of Ridgely & Ridgely, Dover, for third party defendant Frank Elec. Corp.

TAYLOR, Judge.

## MOTION OF CITY OF DOVER FOR SUMMARY JUDGMENT

Plaintiff, J. A. Jones Construction Company, successor to Livsey & Company, Inc., and J. A. Jones Construction Company [Jones],[1] and defendant, City of Dover [Dover] contracted for Jones to install certain equipment and render services in connection with the expansion of Dover's electric generating plant for a contract price of $5,500,000. While the work to be done by Jones was substantial, the progress of the work was dependent upon work of other contractors on the job and upon proper deliveries by various suppliers of equipment and materials. In accordance with the current trend, Dover did not have a general contractor in the traditional sense. Instead, it contracted directly with different suppliers and contractors for different portions of the project.

The Jones contract provided for its completion within 15 months. Jones' complaint asserts that because of delays which were beyond Jones' control and were not Jones' responsibility, it was required to spend an additional 15 months in completing its contract performance. Jones seeks $925,285.92 as additional expense incurred because of the delays.

Jones has based its claim alternatively upon breach of implied covenant, quantum meruit, and tort, asserting gross neglect, recklessness and wilful wrongdoing. Dover has moved for summary judgment against Jones' claim.

1. Dover's contract was with Livsey & Company, Inc., which by process of merger became J. A. Jones Construction Company. Reference to "Jones" will to the extent appropriate be a reference to Livsey & Company, Inc.

2. (A) "Section 1. Time of Construction.
    The time of completion of the construction of the project is of the essence of this Contract. The Bidder will commence the work within __*__ calendar days after the Owner shall have given the Bidder written notice to commence construction, will prosecute diligently and complete such construction to the satisfaction of the Owner and the Engineer within __**__ calendar days after the giving of such notice. The time for completion shall be extended for the period of any reasonable delay due exclusively

Dover contends that Jones' claim for compensation in excess of the contract amount is barred by the terms of their contract. Dover relies on two contract provisions.[2]

### I

■ The portion of paragraph (A) of footnote 2 following the semi-colon in the last sentence deals with the limitation of Dover's liability and states:

"provided, however, that no such delay in the time for completion of the work or in the progress of the work shall result in any liability on the part of the owner, and provided further that any claim for extension of time shall be adjusted at the time any such delay occurs or any such change is made."

The limitation is that "no such delay in the time for completion of the work or in the progress of the work" shall result in liability to Dover. The use of the word "such" in conjunction with "delay" indicates that the quoted phrase was intended to refer to "delay" of a type which had been mentioned, characterized or described in preceding language appearing in close proximity to the phrase which contained the word "such".

Examining the preceding portions of the paragraph, the only reference therein to "delay" is found in the same sentence preceding the semi-colon, and reads:

"The time for completion shall be extended for the period of any reasonable

to causes beyond the control and without the fault of the Bidder, including acts of God, fires, strikes, floods, changes in the Plans and Specification as herein provided, and acts or omissions of the Owner with respect to matters for which the Owner is solely responsible; provided, however, that no such delay in the time for completion of the work or in the progress of the work shall result in any liability on the part of the Owner, and provided further that any claim for extension of time shall be adjusted at the time any such delay occurs or any such change is made.
    (B) "Dates are based on the present job schedule and are not guaranteed. No extra compensation will be due this contractor if those dates are not met."

delay due exclusively to causes beyond the control and without the fault of the Bidder, including acts of God, fires, strikes, floods, changes in the Plans and Specification as herein provided and acts or omissions of the Owner with respect to matters for which the Owner is solely responsible; "

Hence, the delay in time of completion which the contract provides shall not result in liability to the owner is the type of delay described in the quotation immediately above, namely, "any reasonable delay due exclusively to causes beyond the control and without the fault of the Bidder." Hence, the delay must be a reasonable delay and must be due exclusively to causes which are not within the control of and are not the fault of the plaintiff.

It is noted that immediately following the last quoted language is an enumeration of eventualities which are specifically stated to be included within the above-quoted delay clause. Dover contends that the delay referred to in the non-liability clause refers back only to the specific eventualities. This contention overlooks the context in which the specific eventualities appear, namely, not as delays in themselves but as "causes" of delay. It further overlooks the fact that the enumerated eventualities are preceded by the word "including" which indicates that they were not intended to have independent treatment, but were merely specific examples of matters intended to be covered by the general language which preceded the enumeration, namely, "any reasonable delay due exclusively to causes beyond the control and without the fault of the Bidder." Cf. *Northeast Clackamas C. E. Co-Op v. Continental Gas Co.*, 9 Cir., 221 F.2d 329 (1955).

Dover also contends that the phrase "such delay" appearing in the portion of the sentence following the semi-colon was not intended to refer back to the phrase "reasonable delay". No valid basis has been shown for the extraction of the word "reasonable" from its context as a descriptive adjective modifying the word "delay" nor is it necessarily extracted because the phrase "such delay" was used rather than the phrase "such reasonable delay".

Dover also contends that the word "reasonable" relates to the reasonableness of the length of time of the delay and not the reasonableness of all of the factors entering into the delay, including its causation. This argument would have appeal, were it not for the presence of the phrase "for the period of" immediately preceding the reference to reasonable delay. Since the word "period" refers specifically to time, while the word "delay" often has references broader than mere reference to time, it must be assumed that since the word "reasonable" was used to modify "delay" rather than to modify "period," the requirement of reasonableness is not confined to the reasonableness of the period of time but was intended to relate to the reasonableness of all of the factors constituting the delay.

Dover contends that the provision at the end of the quoted sentence which contemplates that the extension of time will be "adjusted at the time any such delay occurs" indicates that it refers to the causal enumerations discussed above. This contention apparently is based on the proposition that a reasonable delay is a mandated extension of the time of completion and does not need to be "adjusted." Assuming the word "adjusted" to mean that the matter would be resolved or settled, common experience is such that any matter which includes a standard of "reasonableness" is something on which people can differ and, therefore, an adjustment of the matter would be necessary. The need for "adjustment" applies whether the extension involves the question of "reasonable delay" or whether it involves the eventualities enumerated after the word "including." Hence, Dover's argument gains nothing from the reference to "adjusted."

Finally, attention is directed to the phrase "or any such change is made." Dover notes that the only reference to "change" is found in the enumerated eventualities. It appears that the clause after the words, "provided further," which fixes the time for raising and adjusting claims for extension of time does relate that time to the occurrence and that one of the occurrences may be a change in the plans and specifications. However, this usage does not require rejection of the construction reached above.

Dover also contends that under Jones' construction there could be no extension for

an unreasonable delay, regardless of the cause. From the wording of the sentence, it is clear that the parties did not address themselves to the question of unreasonable delay. This may be because they assumed that the parties would perform in a businesslike way and not in an unreasonable way. In any case, it is clear that in limiting extensions to those for reasonable delays and in using the abbreviated reference to "such delays" in its limitation of liability clause, Dover has confined its limitation of liability to reasonable delays. To have dealt with the subject of unreasonable delays would have invoked more complex considerations including the causation of the unreasonable delay.

Unless the evidence of negotiations shows that both parties attached a different meaning to the language discussed above, I conclude that it does not protect Dover against Jones' claim to the extent that delays were caused by Dover's breach of its obligations and to the extent that the delays exceed the test of reasonableness.

## II

The second contract clause relied on by Dover reads:

"Dates are based on the present job schedule and are not guaranteed. No extra compensation will be due this contractor if these dates are not met."

It is necessary to consider the scope and effect of the contract clause quoted above which provides that "[n]o extra compensation will be due this contractor if these dates are not met." It is clear that in general the risk of delay in performance of the contract was assumed by Jones. The issue therefore is whether that general language deprives plaintiff of a recovery for delay caused by a failure of Dover to perform its obligation under the contract which brought about the delay.

This clause merely refers to "no extra compensation" if the scheduled dates were not met. Its language does not address itself to possible damages for breaches nor does it address itself to results of violative or unreasonable action of the owner.[3] Doubt exists as to whether a clause which refers to "no extra compensation" touches the subject of damages for unreasonable action or inaction amounting to breach by the protected party of its obligation under the contract unless the dealings of the parties show that result to have been contemplated.[4]

Even if the parties intended the language to protect the owner from a claim for damages against the owner, public policy intervenes to prevent absolute protection. A party may not protect itself against liability for its own fraudulent act or bad faith. 6A *Corbin on Contracts* § 1472, p. 606. Even if a contract purports to give a general exoneration from "damages," it will not protect a party from a claim involving its own fraud or bad faith. *Anthony P. Miller, Inc. v. Wilmington Housing Authority*, D.Del., 165 F.Supp. 275 (1958).

Jones contends that under this test bad faith "implies breach of faith, wilful failure to respond to plain, well understood statutory or contractual obligations," citing *National Labor Relations Board v. Knoxville Publishing Co.*, 6 Cir., 124 F.2d 875 (1942). Moreover, Jones contends that "gross negligence" may be encompassed within the concept of bad faith, citing *Chartered Bank v. American Trust Co.*, N.Y.Supr., 47 Misc.2d 694, 263 N.Y.S.2d 53 (1965) and *Kipp v. Smith*, Wis.Supr., 137 Wis. 234, 118 N.W. 848 (1908).

Dover contends that similar language was held in *United States v. Croft-Mullins Electric Company*, 5 Cir., 333 F.2d 772 (1964) to be sufficient to bar a claim based on implied contractual duty to furnish materials within the contract performance schedule. *Croft-Mullins* involved a contract provision[5] which addressed itself to the spe-

---

3. In a somewhat different context, it has been held that damages for breach of contract do not constitute "extra compensation" within a prohibition against the latter. Failure by owner to provide plans and specifications timely is ground for damages. *Bates & Rogers Const. Co. v. Bd. of Com'rs of Cuyahoga County Ohio*, N.D. Ohio, 274 F. 659 (1920); *Board of Regents of University of Texas v. S & G Construction Co.*, Tex.Ct.App., 529 S.W.2d 90 (1975).

4. Plaintiff's claim is not for additional profit. Its claim is for increased expenses which it incurred by reason of the delay.

5. "For any delay in delivery or failure to deliver any or all of the Government-furnished property, the Government shall not be liable to the Contractor for damages, loss of profits, or increased costs."

cific subject which was the cause of the delay and provided that there would be no liability to the contractor "for damages, loss of profits or increased costs" because of that specific delay. Clearly, that clause when read with the "no guarantee of time for delivery" clause which preceded it left no doubt that there was no presumed duty to deliver the equipment on time. Here, the contract did not address itself at all to the obligation of Dover to further the project and its absence does not negate the duty which the law otherwise implies. *Croft-Mullins* recognizes that in the absence of express provision which negates the implication, a duty on the part of the owner to supply the equipment within the contract time would have been implied.

*Peter Kiewit Sons Co. v. Iowa Southern Utilities Co.*, S.D.Iowa, 355 F.Supp. 376 (1973) cited by Dover recognizes that the presence of a "no damage" clause does not bar recovery for delays which were of a kind not contemplated by the parties, were caused by bad faith, or were caused by the active interference of the contractee.

*Burgess Cons. Co. v. M. Morrin & Son Co.*, 10 Cir., 526 F.2d 108 (1975), held that the proper test for recovery is whether the delay was unnecessary or unreasonable.

*F. D. Rich Co. v. Wilmington Housing Authority*, 3 Cir., 392 F.2d 841 (1968), cited by Dover in support of its no liability contention involved delays resulting from unforeseen soil conditions and did not involve a claim that unreasonable delay was attributable to wrongful action or inaction by the owner.

The issue here is not whether a protective clause should be favored where a public agency is involved. Compare *A. Kaplan & Son, Ltd. v. Housing Authority*, 42 N.J.Super. 230, 126 A.2d 13 (1956), relied upon by Dover. The issue is the proper effect to be accorded the language used.

At this stage of the proceedings it is not necessary to differentiate among the three grounds upon which Jones bases its claim, since all grounds involve the same set of facts and since the negligence test discussed

hereafter may afford Dover even less protection than it may have under the theory of breach of contract.[6]

### III

The principle has long been established in this State that contractual provisions which purport to relieve a party from liability for matters resulting from its own fault are not favored. *Marshall v. Maryland, D. & V. Ry. Co.*, Del.Super., 1 W.W.Harr. 170, 112 A. 526 (1921); *Pan American World Airways v. United Aircraft Corp.*, Del.Supr., 3 Storey 7, 163 A.2d 582 (1960). The language here is protective in many instances, but it cannot be considered to be protection against claims of the gravity alleged in the complaint. Exemplary of this principle is the language found in the General Electric and Westinghouse contracts discussed in a companion opinion in this case involving Dover and its third party defendants. Yet, as found in that opinion, even detailed protective clauses may not meet the Delaware test, at least as protection against one's own negligence. The deficiency found in the companion opinion exists here.

Unless it appears after trial that the parties in their contractual relations specifically addressed themselves to this issue and contemplated that the language used protected Dover against its own negligence, the language used here does not under Delaware law protect Dover, at least against Jones' tort claim.

### IV

Dover cannot be liable unless it (1) was under a duty and (2) breached that duty. An owner owes certain duties to a contractor who undertakes to build upon the owner's land which are inherent in the contract. He must make the land available for the work to be done. *Bomberger v. McKelvey*, Cal.Supr., 35 Cal.2d 607, 220 P.2d 729 (1950); *Bates & Rogers Const. Co. v. Bd. of Com'rs. of Cuyahoga County, Ohio*, supra; *Wright & Kremers, Inc. v. State*, N.Y.Ct.App., 263 N.Y. 615, 189 N.E. 724·

---

**6.** Plaintiff bases its contract claim upon unreasonable delays "caused by gross indifference" and its tort claim upon "wilful, negligent, and wrongful acts or omissions" of Dover and its employees "which amount to gross neglect and recklessness."

(1934); *Southern Gulf Utilities, Inc. v. Boca Ciega San. Dist.*, Fla.App., 238 So.2d 458 (1970). He must not interfere with the progress of the work. *California v. U. S.*, D.Cal., 151 F.Supp. 570 (1957); *Norman Company v. County of Nassau*, N.Y.App. Div., 27 A.D.2d 936, 278 N.Y.S.2d 719 (1967); *Northeast Clackamas C. E. Co-Op v. Continental Gas Co.*, supra; *Burgess Const. Co. v. M. Morrin & Son Co., Inc.*, supra. If plan approvals or other choices are contemplated, he must take action reasonably. *Seglin-Harrison Const. Co. v. State*, N.Y.Ct. Cl., 30 N.Y.S.2d 673 (1941). If he has contracted with others to perform work which is interrelated with the work of this contract he may have a responsibility to take reasonable action to assure such performance—at least upon request. *Tippets-Abbett v. New York State Thru. Auth.*, N.Y. Ct.Cl., 27 Misc.2d 522, 212 N.Y.S.2d 275 (1961).

■ The above responsibilities of an owner or contractee are inherent in the relationship of the parties and are not lacking merely because they are not specifically set forth in the contract. Dover points to the contract provision that "[d]ates are based on the present job schedule and are not guaranteed." There may be many causes for delays and this clause makes clear that, in general, Jones assumed the risk of delay. But it is not sufficient to relieve Dover of responsibilities which inherently rest upon it in order to permit the contract to be performed, where matters have been brought to its attention and its action or inaction is unreasonable.

### V

Summary judgment will not be granted if material facts are in dispute. Moreover, it must appear from undisputed facts after drawing all reasonable inferences most favorably to the non-moving party that the moving party is entitled to judgment. *Wagner v. Olmedo*, Del.Supr., 365 A.2d 643 (1976); *Hurtt v. Goleburn*, Del.Supr., 330 A.2d 134 (1974); *Mechell v. Palmer*, Del. Supr., 343 A.2d 620 (1975); *Schorah v. Carey*, Del.Supr., 331 A.2d 383 (1975); *Collins v. F. W. Woolworth Co.*, Del.Supr., 295 A.2d 732 (1972); *Ebersole v. Lowengrub*, Del.

Supr., 4 Storey 463, 180 A.2d 467 (1962); *Murphy v. T. B. O'Toole, Inc.*, Del.Super., 8 Terry 99, 87 A.2d 637 (1952); *Phillips v. Delaware Power and Light Co.*, Del.Supr., 216 A.2d 281 (1966); *Behringer v. William Gretz Brewing Co.*, Del.Super., 3 Storey 365, 169 A.2d 249 (1961); *Woodcock v. Udell*, Del.Super., 9 Terry 69, 97 A.2d 878 (1953). Applying this test, the motion for summary judgment on Jones' claim involving alleged unreasonable delays "caused by gross indifference" and by "wilful, negligent and wrongful acts or omissions" must be denied.

IT IS SO ORDERED.

### MOTIONS OF GENERAL ELECTRIC AND WESTINGHOUSE FOR SUMMARY JUDGMENT

City of Dover [Dover], in a third party complaint, seeks judgment against General Electric Company [General Electric] and Westinghouse Electric Corporation [Westinghouse] and other contractors not involved in these motions for delays in the completion of an addition to Dover's electric generating plant.

Under its contract with Dover, General Electric undertook to provide a 100,000 kilowatt steam turbine generator, various piping, coolers and equipment related to those items and reheating equipment. Dover claims delays were caused by failure of General Electric to perform on time and failure of some of the items which were furnished to conform to plans and specifications both physically and functionally. General Electric seeks summary judgment based on limitation provisions in the contract. In addition, General Electric seeks summary judgment on its counterclaim against Dover for amounts claimed to be due under the contract.

Under its contract with Dover, Westinghouse agreed to provide drawings and technical data and to supply motor control centers. Dover claims that delays were caused by failure of Westinghouse to perform on time. Westinghouse seeks summary judgment based on limitation provisions in the contract.

Dover found claims against both defendants on breach of contract and tort. It

seeks to charge the claims of plaintiff against General Electric and Westinghouse and in addition seeks $3,320,297.68 damages. General Electric and Westinghouse rely upon contract provisions which are strikingly similar. Because of the common issues the two motions will be considered together and General Electric and Westinghouse will be referred to as "defendants" without differentiation except where the context requires separate discussion.

Defendants seek to avoid Dover's claim on the basis of certain contractual provisions which relate to equipment warranty, the extent of liability for failure of the equipment to meet the warranty, and a broad limitation upon liability.[1]

### 1. WESTINGHOUSE PROVISIONS:
*Warranty*

Westinghouse warrants that the equipment sold by it will, upon shipment, be free of defects in workmanship or material. Should any failure to conform to this warranty become apparent during a period of one year after the date of shipment, Westinghouse shall, upon prompt written notice from the purchaser, correct such non-conformity by repair or replacement F.O.B. factory of the defective part or parts. Correction in the manner provided above shall constitute a fulfillment of all liabilities of Westinghouse with respect to the quality of the products.

The foregoing warranty is exclusive and in lieu of all other warranties of quality whether written, oral, or implied (including any warranty of merchantability or fitness for purpose).

The remedy(ies) provided above shall be purchaser's sole remedy(ies) for any failure of Westinghouse to comply with the warranty provisions, whether claims by the purchaser are based in contract or in tort (including negligence).

*Limitation of Liability*

Westinghouse shall not be liable in contract or in tort for special, indirect, incidental, or consequential damages, such as, but not limited to, loss of profits or revenue, loss of use of power system, cost of capital, cost of purchased or replacement power, or claims of customers of purchaser for service interruptions. The remedies of the purchaser set forth herein are exclusive, and the liability of Westinghouse with respect to any contract or anything done in connection therewith such as the performance or breach thereof, or from the manufacture, sale, delivery, resale, installation or technical direction of installation, repair or use of any equipment covered by or furnished under this contract whether in contract, in tort, or otherwise, shall not exceed the price of the equipment or part on which such liability is based."

### GENERAL ELECTRIC PROVISIONS:
*Warranty*

The Company [General Electric] warrants to the Purchaser [Dover] that the equipment to be delivered hereunder will be free from defects in material, workmanship and title and will meet the specifications contained in the contract of sale. The foregoing warranty is exclusive and in lieu of all other warranties whether written, oral, or implied, including any warranty of merchantability or fitness for purpose.

\* \* \* \* \* \*

If the equipment delivered hereunder does not meet the warranty specifications above, assuming normal and proper use and maintenance, the Purchaser shall notify the Company and make the equipment available promptly for correction. The Company shall thereupon correct any defect, including non-conformance with the specifications, at its expense, either, at its option, by repairing or replacing any defective or damaged parts of the equipment.

The liability of the Company to the Purchaser (except as to title) arising out of the supplying of the said equipment, or its use, whether on warranty, contract or negligence, shall not in any case exceed the cost of correcting defects in the equipment as herein provided, and upon the expiration of said one year all such liability shall terminate. The foregoing shall constitute the exclusive remedy of the Purchaser and the sole liability of the Company."

*Limitation of Liability*

Except as otherwise expressly provided, the Company's liability on any claim of any kind, including negligence, for any loss or damage arising out of, connected with or resulting from this contract, or from the performance or breach thereof, or from the manufacture, sale, delivery, resale, installation or technical direction of installation, repair or use of any equipment covered by or furnished under this contract shall in no case exceed the price allocable to the specific equipment or part thereof which gives rise to the claim.

In no event, whether as a result of breach of contract, alleged negligence, or otherwise, shall the Company be liable for special or consequential damages such as, but not limited to, loss of profits or revenue, loss of use of power system, cost of capital, cost of purchase or replacement power, or claims of customers of Purchaser for service interruptions.

Section 4—Defective Material and Workmanship

\* \* \* \* \* \*

(b) The Equipment furnished hereunder shall become the property of the Purchaser upon delivery, provided, however, that the Purchaser within one year after delivery or within the period for which the Equipment is guaranteed,

### I

The parties have proceeded on the basis that this contract is within the coverage of the Uniform Commercial Code. 6 *Del.C.* Article 2. The draftsmen of the Sales Article of the U.C.C. were unwilling to leave the subject of contractual limitation of liability exclusively in the hands of the contracting parties. They permitted contractual limitation upon warranty and liability (6 *Del.C.* § 2–719) but they provided certain restraints which must be satisfied. One is the general restraint that a contract or clause will not be enforced in such way as to produce an unconscionable result. 6 *Del.C.* § 2–302. A second restraint is that a limitation of liability or remedy will not be enforced where the circumstances cause the contractual remedy . . . "to fail of its essential purpose." 6 *Del.C.* § 2–719(2). A third restraint is that a limitation on consequential damages will not be enforced if it is unconscionable. 6 *Del.C.* § 2–719(3).

In the absence of contractual limitation which qualifies under 6 *Del.C.* § 2–719, the claims of Dover against defendants are permissible under 6 *Del.C.* §§ 2–714 and 715 if properly proved.

### A.

■ Turning to subsection (2) of 6 *Del.C.* § 2–719, the contractual limitation is inapplicable if the circumstances cause the exclusive or limited remedy to fail of its essential purpose. This limitation appears to apply to all phases of the limited contractual remedy, in contrast to subsection (3) which deals exclusively with the subject of consequential damages. In determining whether the contract limitation fails of its essential purpose, the facts and circumstances surrounding the contract, the nature of the basic obligations of the party, the nature of the goods involved, the uniqueness or experimental nature of the items, the general availability of the items, and the good faith and reasonableness of the provision are factors which should be considered. 2 *Anderson on Uniform Commercial Code*, pp. 506–512, §§ 2–719:9–22. The official comment by the draftsman of the Uniform Commercial Code with respect to this section states:

"It is of the very essence of a sales contract that at least minimum adequate remedies be made available." 1A *Uniform Commercial Code* § 2–719, Official Comment.

The comment further states that the contract must provide "that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract." Ibid.

The language of § 2–719(2) shows that the draftsmen of the Article intended to provide flexibility in molding contractual liability according to the actual nature of the transaction. At the same time the protective feature must not render performance rights under the contract illusory. Underlying the concept of contractual limitation of liability is the presumption that there will be good faith effort by the contracting party to perform its contractual obligations. 6 *Del.C.* § 1–203; 2 *Anderson*

---

whichever is longer, may reject any Equipment which does not comply with the Specification attached hereto and made a part hereof or with the guarantees, if any, of the Seller and the ·manufacturer. Upon any such rejection, the Seller shall repair or replace such defective Equipment within a reasonable time after notice in writing from the Purchaser and in the event of failure by the seller so to do, the Purchaser may make such replacement and the cost and expense thereof shall be paid by and recoverable from the Seller.

(c) Except as otherwise expressly provided, the Seller's liability on any claim of any kind, including negligence, for any loss or damage arising out of, connected with, or resulting from this contract, or from the performance or breach thereof, or from the manufacture, sale, delivery, resale, installation, or technical direction of installation, repair or use of any equipment covered by or furnished under this contract shall in no case exceed $500,000 and all such liability shall terminate upon the expiration of four years after completion of installation of the unit.

(d) In no event, whether as a result of breach of contract, alleged negligence, or otherwise, shall the Seller be liable for special or consequential damages such as, but not limited to, loss of profits or revenue, loss of use of power system, cost of capital, cost of purchased or replacement power, or claims of customers of Purchaser for service interruptions.

on *Uniform Commercial Code*, pp. 508–9, § 2–719:14. Performance involves kind, quantity, quality and time.

■ To the extent that quality of items is not specified in the contract the supplier of goods shall comply with the standards prevailing in the industry. 6 *Del.C.* § 1–205; 1 *Anderson on Uniform Commercial Code*, p. 387, § 2–301:4. Hence, when the supplier undertakes to provide materials of specified dimension or of specified quality or material, the items supplied must meet the traditional standards of compliance. Obviously, parts supplied by the supplier which are intended to be used together must be of such dimension as to reasonably work together. Implicit in the limitation of remedy provision is the expectation that the supplier will reasonably comply with the specific terms of the contract. *Neville Chemical Co. v. Union Carbide Corp.*, 3 Cir., 422 F.2d 1205 (1970). The applicability of this test may depend upon the nature of the item being supplied and whether it is unique or experimental.

■ Time of performance is often an important contractual item. Where the buyer is entitled to segmented performance the significance of time of performance specified in the contract may be less clear. Time may have particular significance where the work of various contractors or suppliers is interdependent. Where a time of delivery is specified without being made of the essence, it is contemplated that there shall be reasonable compliance therewith in accordance with the standards of the industry. 6 *Del.C.* § 1–204, § 1–309; 1 *Anderson on Uniform Commercial Code*, p. 447, § 2–309:4. Also, the U.C.C. under certain circumstances appears to give a seller a "second chance" to supply goods which satisfy the contract specifications. 6 *Del.C.* § 2–508.

This case involves charges of unreasonable delay and hence the issue is whether defendants are protected from liability for delays which do not qualify as reasonable delays. Insofar as a liability limitation clause undertakes to limit liability to the cost of replacement from an outside source if a defendant fails to replace within a reasonable time, the clause may be contrary to a basic objective of the contract, which is that delivery and repair or replacement of defective items will have been effected within a reasonable time. A limitation clause which gives more protection to the seller shifts to the buyer the expense of delay while the buyer obtains substitute goods from a different source after the seller has exhausted a reasonable time. While the delay might be slight in the case of goods available on the open market, substantial delay may be involved if the goods must await production after order. An essential contractual purpose may be that the item or services be received within a reasonable time.

In *Beal v. General Motors Corporation*, D.Del., 354 F.Supp. 423 (1973), Judge Stapleton considered the disqualification of a limitation of liability provision because it failed of its essential purpose. He found that the provision which limited the buyers' remedy to replacement or repair of defective parts was founded upon the premise that the buyer would receive goods that conformed to the contract within a reasonable time after the defect was discovered. Hence, where the seller failed to correct the defect as promised within a reasonable time, the limitation if applied would cause failure of its essential contractual purpose and the seller was held liable in damages for breach of warranty notwithstanding the contractual limitation. A similar standard was applied in *Jones & McKnight Corp. v. Birdsboro Corporation*, N.D.Ill., 320 F.Supp. 39 (1970). Similarly, see *Ehlers v. Chrysler Motor Corporation*, S.D.Supr., 226 N.W.2d 157 (1975); *Moore v. Howard Pontiac-American, Inc.*, Tenn.Ct.App., 492 S.W.2d 227 (1972). A similar result was reached in *Bosway Tube and Steel v. McKay Machine Company*, 65 Mich.App. 426, 237 N.W.2d 488 (1975) in which the machinery was grossly defective when delivered. See also *Eckstein v. Cummins*, 41 Ohio App.2d 1, 321 N.E.2d 897 (1974); *Adams v. J. I. Case Company*, 125 Ill.App.2d 388, 261 N.E.2d 1 (1970).[2]

2. Defendants argue that a different standard has been applied in motor vehicle cases than in heavy installations, such as electric generating equipment. The cases cited do not indicate a judicial intention to make such a distinction in interpreting the statute. It is recognized that determination of reasonable time may be more difficult in contracts requiring more protracted and segmented performance than in those involving delivery or repair of a single item such as a motor vehicle. However, no valid distinction has been shown to deprive one of the benefit of reasonable time performance in one instance and not in the other.

Subject to any pertinent showing concerning the contract negotiations indicating that the parties intended the provision to have a different effect here, the reasonable time test applied in *Beal* and the other cases cited above is strongly persuasive and should be applied.

Certain cases relied upon by defendants have applied limitation clauses to bar consequential damages for failure of a turbine-generator or plant to meet expected level of performance. *American Electric Power Company v. Westinghouse Electric Corp.,* S.D.N.Y., 418 F.Supp. 435 (1976); *Potomac Electric Power Co. v. Westinghouse Electric Corp.,* D.D.C., 385 F.Supp. 572 (1974); *Cryogenic Equipment Co. v. Souther Nitrogen, Inc.,* 8 Cir., 490 F.2d 696 (1974); *U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.,* E.D. Mich., 358 F.Supp. 449 (1972); *Ebasco Services, Inc. v. Pennsylvania Power & Light Co.,* E.D.Pa., 402 F.Supp. 421 (1975); *Royal Indemnity Company v. Westinghouse Electric Corp.,* S.D.N.Y., 385 F.Supp. 520 (1974); *V–M Corporation v. Bernard Distributing Company,* 7 Cir., 447 F.2d 864 (1971); *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.,* 9 Cir., 422 F.2d 1013 (1970). For similar application to an item of new and untried design, see *Dow Corning Corp. v. Capitol Aviation, Inc.,* 7 Cir., 411 F.2d 622 (1969). As noted above, the U.C.C. draftsmen recognized the need to allocate risks with respect to quality performance of special or experimental items, and the above-cited cases would appear to fall within that general policy. It does not appear that for the most part the present claims involve failure of the items to perform properly. Moreover, generally the above cases found that the seller had met the test of reasonableness.

Defendants' reliance on contract provisions defining the exclusive warranty of quality and merchantability and fitness for purpose does not apply to Dover's claim against Westinghouse which is based on delay in original performance nor to a substantial portion of its claim against General Electric in which the claim also is based on delay.

■ Defendants seek to distinguish the provisions in *Ehlers v. Chrysler Motor Corporation,* supra, and *Moore v. Howard Pontiac-American, Inc.,* supra and *Riley v. Ford Motor Company,* 5 Cir., 442 F.2d 670 (1971), which allowed recovery despite a liability limitation clause, on the basis that in those instances the warranty provision and the limitation of liability were combined. In contrast, the warranty and limitation of liability provisions in these contracts are separate provisions. While this is a factual distinction, it is not determinative. I do not find that the scope or effect of § 2–719 turns upon the location of the clause within the contract. The same observations are applicable to Westinghouse's distinction of *Jones & McKnight Corp. v. Birdsboro Corporation,* supra, and *Adams v. J. I. Case Company,* supra, in which the subject of excluding consequential damages was involved.

General Electric contends that its liability limitation clause cannot make the remedy fail of its essential purpose because the buyer is assured of obtaining the contract items at the expense of the seller even if the buyer has to purchase them elsewhere. Assuming that clause, which is found in a contract section entitled "Defective Material and Workmanship," applies to all instances of seller's failure to comply with the contract and overrides the seller's more protective and conflicting language in the section entitled "Limitation of Liability," it becomes operative only after the seller has had a reasonable time to repair or replace. Hence that clause requires the buyer to assume the financial burdens for the reasonable repair or replacement time afforded seller and also for the time required to find an alternate supplier and the waiting time until that supplier can perform.

To give the liability limitation clause the full effect sought by defendants would be to convert the contract into an optional contract in which the sole determination of whether the contract would be performed would rest upon defendants' choice and the buyer would assume all of the expense and inconvenience of delay.

Contracts are entered into based upon the premise that each party will in good faith make reasonable effort to meet its obligations under the contract. Hence, contract terms will ordinarily be read to incorporate

that premise. It has been noted above that liability limitation provisions must meet the test of reasonableness if it is to be given effect. 2 *Anderson on Uniform Commercial Code*, p. 501, § 2–719:1, p. 507, § 2–719:12.

■ I conclude that if a liability limitation provision is relied upon to protect a party from the results of its violation of the premise stated above, to that extent the provision may not pass the test of reasonableness and there may be failure of essential purpose. In making this determination it may be appropriate that the contract negotiations be considered to determine whether they placed the contractual relationship of the parties upon a different basis.

### B.

The discussion so far has not specifically addressed the limitation upon consequential damages. Dover contends that the provision barring consequential damages is unconscionable in this case.

It is generally held that the unconscionability test involves the question of whether the provision amounts to the taking of an unfair advantage by one party over the other. It should be observed that Dover has been in the business of generating and selling electric power for many years.

To the extent that the test discussed above could not be met, the test of conscionability is not meet. Determination of unconscionability involves an evaluation which is not permissible at the summary judgment stage here.

### II

The opinion noted at its outset that Dover's claims assert both breach of contract and tort. The applicability of the liability limitation clause as a defense to a charge of negligence must be considered.

The principle has long been established in *this* State that contractual provisions which purport to relieve a party from liability for matters resulting from its own negligence are not favored. *Marshall v. Maryland, D. & V. Ry. Co.*, Del.Super., 1 W.W.Harr. 170, 112 A. 526 (1921); *Pan American World Airways v. United Aircraft Corp.*, Del. Supr., 3 Storey 7, 163 A.2d 582 (1960).

In *All-State Inv. and Sec. Agcy., Inc. v. Turner Const. Co.*, Del.Supr., 301 A.2d 273 (1972) the Delaware Supreme Court specifically pointed out the need for an express provision showing the intent to relieve a party from the result of its own negligence in order for that result to flow from a contract provision. See also *Powell v. Interstate Vendaway, Inc.*, Del.Super., 300 A.2d 241 (1972).

The Delaware cases which have found contractual language sufficient to protect a party against a claim based on its own negligence have all specifically referred to negligence of the protected party. *Warburton v. Phoenix Steel Corporation*, Del.Super., 321 A.2d 345 (1974), aff'd., *Noble J. Dick, Inc. v. Warburton*, Del.Supr., 334 A.2d 225 (1975); *All-State Investigation and Security Agency, Inc. v. Turner Construction Company*, supra. Conversely, contractual provisions which purport to give protection generally against liability or which even protect against negligence generally have been held not to meet the test for protection from a claim based on one's own negligence. *State v. Interstate Amiesite Corporation*, Del.Supr., 297 A.2d 41 (1972); *Blum v. Kaufman*, Del.Supr., 297 A.2d 48 (1972); *Powell v. Interstate Vendaway, Inc.*, supra.

■ Defendants contend that this principle applies only to indemnification against claims by third parties. This distinction is not generally supportable. Clearly, whether the loss is suffered by a contracting party directly or by virtue of a claim by a third party, the claim must be founded on negligence of the defending contract party where the contract provision involves the allocation of risk between the contracting parties. The public policy of not lightly exonerating a party from the results of his own negligence is well recognized. 5 *Corbin on Contracts*, p. 389, § 1068; 6A, pp. 596–606, § 1472. No valid reason has been presented for differentiating between a contract provision whereby one party re-

lieves the other from liability for its own negligence by way of indemnity and that which relieves the party from traditional liability for losses or additional expenses incurred in performance of contract work.

In *Pan American World Airways v. United Aircraft Corp.*, supra, an attempt to differentiate between contractual exoneration involving damage to third parties and that involving damage to a contracting party was rejected by the Supreme Court.

*Potomac Electric Power Company v. Westinghouse Electric Corp.*, supra; *Royal Indemnity Company v. Westinghouse Electric Corporation*, supra, and *Gates Rubber Company v. USM Corporation*, 7 Cir., 508 F.2d 603 (1975), relied on by defendants, also recognize that the State standards required to exonerate a party from its own negligence apply to claims by a contracting party for its own losses as well as for losses suffered by a third party.

It is recognized that the public policy differs in the various States. Moreover, the degree of preciseness required in order for a contract to alter the ordinary liability of a party for the consequences of its own acts or negligence differs in the various States. However, the policy established by the Delaware cases cited above is in my judgment applicable here, and that policy is that contract language will not suffice to relieve a contracting party of its failure to satisfy legal obligations unless the contract language makes it crystal clear and unequivocal that the parties specifically contemplated that the contracting party would be relieved of its own defaults.

The limitation clauses of these defendants differ in that the Westinghouse clause makes no reference to "negligence," while the General Electric clause does refer to "negligence." Neither clause contains language pointing out that the seller is protected from liability for its own negligence or wrongdoing. This Court noted in *Warburton v. Phoenix Steel Corporation*, Del. Super., 321 A.2d 345, 347 (1974), aff'd 334 A.2d 225 (1975):

"The requirement is that the language of the indemnity provision address itself to the subject of the negligence of the indemnitee and by its terms show a clear and unequivocal intention that the indemnitee was intended to be indemnified against its own negligence."

It is not the reference to "negligence" generally, but a reference to the negligent wrongdoing of party protected by the limitation which is required. Neither clause points to negligent wrongdoing *of the protected party*. This essential element is missing from both clauses. Whether the negotiations here show that the requisite element was clearly understood to have been contemplated by the contract language is not presently before the Court. *Tull v. Turek*, 38 Del.Ch. 182, 147 A.2d 658 (1958).

Defendants contend that by virtue of 6 *Del.C.* § 2–719, the common law public policy which requires great clarity to exonerate one from the results of one's own negligence is not applicable where that section governs the relations of the parties.

Both 6 *Del.C.* § 2–719 and Delaware public policy permit exoneration. 6 *Del.C.* § 2–719 does not undertake to cover the manner in which limitation clauses shall be set forth. The Delaware public policy specifies the degree of clarity which the provision must contain. Hence, there is no conflict between the Delaware public policy and § 2–719 and that policy governs the required content of a clause permitted under § 2–719 for purposes of a tort claim.

III

It has been repeatedly recognized that the issue of whether limitation provisions are enforceable under the contractual relations of the parties and the nature of the contractual performance are matters which generally should not be decided on the pleadings or on summary judgment. *Southwest Forest Industries, Inc. v. Westinghouse Electric Corporation*, supra; *Neville Chemical Company v. Union Carbide Corporation*, supra; *Dow Corning Corporation v. Capitol Aviation, Inc.*, supra; *Jones*

& *McKnight v. Birdsboro Corporation,* supra; *Luick v. Graybar Electric Company, Inc.,* 8 Cir., 473 F.2d 1360 (1973). Moreover, it is general law in this State that summary judgment will not be granted (1) if there is a dispute as to material facts or, (2) where all the material facts are undisputed, the undisputed facts and reasonable inferences therefrom when viewed most favorably to the non-moving party do not require a decision for the moving party. *Wagner v. Olmedo,* Del.Supr., 365 A.2d 643 (1976); *Hurtt v. Goleburn,* Del.Supr., 330 A.2d 134 (1974); *Mechell v. Palmer,* Del.Supr., 343 A.2d 620 (1975); *Schorah v. Carey,* Del.Supr., 331 A.2d 383 (1975); *Collins v. F. W. Woolworth Co.,* Del.Supr., 295 A.2d 732 (1972); *Ebersole v. Lowengrub,* Del.Supr., 4 Storey 463, 180 A.2d 467 (1962); *Murphy v. T. B. O'Toole, Inc.,* Del.Supr., 8 Terry 99, 87 A.2d 637 (1952); *Phillips v. Delaware Power and Light Co.,* Del.Supr., 216 A.2d 281 (1966); *Behringer v. William Gretz Brewing Co.,* Del.Super., 3 Storey 365, 169 A.2d 249 (1961); *Woodcock v. Udell,* Del.Super., 9 Terry 69, 97 A.2d 878 (1953). Here there are material facts which are in dispute and the undisputed facts and necessary inferences therefrom do not compel the conclusion that defendants are shielded from Dover's claims by defendants' protective provisions of the contract.

## IV

Defendants' motions for summary judgment on Dover's claims are denied.

IT IS SO ORDERED.

## V—GENERAL ELECTRIC COUNTERCLAIM

General Electric also seeks summary judgment with respect to its counterclaim for separate claims of $11,846 and $47,680. With respect to the first claim, General Electric at this stage relies upon an acknowledgement of liability by the City Manager of Dover and a letter by Dover's consulting engineers on this project indicating that the claim was justifiable and reasonable. There does not appear to have been any acknowledgement as to interest. Accordingly, in the ultimate disposition of this case, General Electric is entitled to an allowance of $11,846 together with interest from a date to be established by evidence to be introduced by General Electric.

With respect to the claim for $47,680, there appears to be no acknowledgement of liability by Dover and there appears to be an absence of evidentiary proof of the propriety and amount of that claim. Summary judgment is not appropriate with respect to this claim.

IT IS SO ORDERED.