# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TIBCO SOFTWARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N18C-07-066 CLS |
| | ) | |
| MEDIAMATH, INC., | ) | |
| | ) | |
| Defendant. | ) | |


Date Submitted: April 5, 2019
Date Decided: July 10, 2019


*Upon Defendant Mediamath, Inc.'s*
*Motion for Judgment on the Pleadings*
**Denied.**

Josiah R. Wolcott, Esquire, Connolly Gallagher LLP, Newark, Delaware, Attorneys for Plaintiff.

Matthew P. Ward, Esquire, Nicholas T. Verna, Esquire, Womble Bond Dickinson (US) LLP, Wilmington, Delaware, Usher Winslett, Esquire, Of Counsel (*pro hac vice*), Winslett Studnicky McCormick & Bomser LLP, New York, New York, Attorneys for Defendant.


**Scott, J.**

This action arises out of a claim for breach of contract. Plaintiff Tibco Software Inc., ("Tibco") filed a complaint with this Court on July 9, 2018, alleging that Defendant Mediamath, Inc., ("MMI") breached a Master Service Agreement ("Agreement") in failing to pay for services rendered.

## Background

In August 2014, MMI and Intel Services entered into the Agreement, wherein Intel Services agreed to provide certain information, technology, products, services and support to MMI for an established fee. On the same date, MMI and Intel Services executed an Order Form for such services, which provides an end date of December 31, 2017.[1] In September 2015, Tibco acquired the assets of Mashery - including the Agreement - from Intel Corporation.

Between August 2014 and December 2017, Intel Services, during its relevant time period, and Tibco provided services under the Agreement to MMI as specified on the Order Form. The Agreement provides that MMI "must pay all fees as specified on the Order Form, but if not specified then within 30 days of receipt of an invoice."[2] The following line states that the Agreement "contemplates one or more

---

[1] *See* Ex. A of Pl.'s Am. Compl. (July 12, 2018) ("This agreement provides [MMI] access to Intel's proprietary application programming interface management software service (Mashery Service) for [MMI]'s use with its application programing interface (Customer API) as specified on an order form (Order Form) . . . .") [hereinafter, "Agreement"].
[2] Agreement § 3.

2

Order Forms for the Mashery Service, which Order Forms are governed by the terms of this agreement."[3] Additionally, the Order Form provides that "[a]ll payments are due on a net 30 basis and are subject to a 1.5% late fee."

On January 9, 2018, Tibco sent an invoice to MMI in the amount of $321,187.46 ("Invoice"). Thirty days later, on February 8, 2018, MMI had not paid the Invoice. Thereafter, on February 12, 2018, Tibco sent a demand letter to MMI requesting payment. At present, the Invoice remains unpaid.

## Parties' Contentions

Tibco alleges that it has been damaged by MMI's failure to pay the Invoice in accordance with the terms of either the Work Order or the Agreement. Tibco contends that such failure to pay entitles it to compensation in the amount of the unpaid Invoice plus pre- and post-judgment interest accruing at the contractual rate of 1.5% per month as of February 8, 2017, as well as costs and other such relief the Court deems just.

In its answer, MMI asserted a counterclaim seeking a declaratory judgement that the Agreement caps MMI's liability at zero dollars. Specifically, MMI refers to a provision in the Agreement that provides "neither party's aggregate liability arising out of or related to this agreement (whether through indemnification, in contract, tort or otherwise) will exceed the actual amount paid by [MMI] within the 12 months

---

[3] *Id.*

3

preceding the event that gave rise to the liability."[4] Both parties agree that the "event that gave rise to the liability" is the non-payment of the Invoice allegedly due on February 8, 2018. But MMI reasons that because "the actual amount paid by [MMI] within the 12 months preceding" that date is zero dollars, it cannot be held liable for the Invoice amount. MMI moves for judgment on the pleadings on the same grounds.

Tibco opposes the motion for several reasons. First, Tibco argues that without the benefit of discovery, MMI's request for judgment on the pleadings based on the limitation of liability provision in the Agreement should be denied at this early stage. Next, Tibco claims that the liability limitation provision is unenforceable under Delaware law as an unreasonable provision that leads to an absurd result. Tibco additionally submits that to interpret the liability limitation provision as a bar against recovery based on a breach by the party invoking the clause runs contrary to Delaware's objective theory of interpreting contracts. Tibco's final argument challenges MMI's understanding of the liability limitation provision as conflicting with the Agreement's overall scheme or plan and thus contends that the provision should not apply to MMI's payment obligations under the Agreement.

---

[4] Agreement § 7(B).

4

## Standard of Review

The standard for a motion for judgment on the pleadings is "almost identical" to the standard for a motion to dismiss.[5] In reviewing such a motion, the Court must accept all well pleaded facts in the complaint as true and construe all reasonable inferences in favor of the non-moving party.[6] A motion for judgment on the pleadings may only be granted where there are no disputed facts and the moving party is entitled to judgment as a matter of law.[7]

## Discussion

A contractual provision that purports to relieve a party from liability for damages resulting from his own negligence is disfavored under Delaware law.[8] It is generally understood that "contract language will not suffice to relieve a contracting party of its failure to satisfy legal obligations unless the contract language makes it crystal clear and unequivocal that the parties specifically contemplated that the contracting party would be relieved of its own defaults."[9]

---

[5] *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Ct. Aug. 8, 2012) (citing *Ross Holding and Mgmt. Co. v. Advance Realty Group*, LLC, 2010 WL 1838608, at *5 (Del.Ch. Apr. 28, 2010)).

[6] *Doe v. Bradley*, 2011 WL 290829, at *3 (Del. Super. Ct. Jan. 21, 2011).

[7] *O'Leary v. Telecom Res. Serv.*, LLC, 2011 WL 379300, at *3 (Del. Super. Ct. Jan. 14, 2011).

[8] *Delmarva Power & Light Co. v. ABB Power T & D Co., Inc.*, 2002 WL 840564, at *6 (Del. Super. Ct. Apr. 30, 2002) (citing *J. A. Jones Const. Co. v. City of Dover*, 372 A.2d 540, 556 (Del. Super. Ct. 1977)).

[9] *J. A. Jones Const.*, 372 A.2d at 552 ("The Delaware cases which have found contractual language sufficient to protect a party against a claim based on its own negligence have all specifically referred to negligence of the protected party.

The at-issue liability limitation provision of the Agreement, titled "Total limit on liability," reads as follows, in relevant part:

> [N]either party's aggregate liability arising out of or related to this agreement (whether through indemnification, in contract, tort or otherwise) will exceed the actual amount paid by Customer within the 12 months preceding the event that gave rise to the liability.[10]

Clear and unambiguous contractual language is given its ordinary and usual meaning.[11] An ambiguity exists "when the provisions in controversy are *reasonably or fairly susceptible* of different interpretations or may have two or more different meanings."[12] An unreasonable interpretation is one that "produces an absurd result or one that no reasonable person would have accepted when entering the contract."[13]

The Court finds MMI's proffered interpretation unreasonable. Despite admitting that it has not paid the $321,187.46 owed under the Invoice, MMI asks the Court to construe the aforementioned provision as limiting Tibco's recovery to zero dollars. Surely no reasonable party would conclude that a failure to pay fees owed under an enforceable contract can be the same basis used to avoid responsibility for the same fees. Fundamental to the concept of contractual limitation of liability is

---

Conversely, contractual provisions which purport to give protection generally against liability or which even protect against negligence generally have been held not to meet the test for protection from a claim based on one's own negligence.")

[10] Agreement § 7(B).

[11] *Rhone-Poulenc Basic Chem. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992).

[12] *Id.* (emphasis added).

[13] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

the presumption that there will be good faith effort by the contracting party to perform its contractual obligations.[14] For the liability limitation provision to relieve a MMI from the results of its own alleged negligence, it must expressly show an intent to do so. It does not. To find otherwise would produce an absurd result.

Under the facts of this case, the proper interpretation of the Agreement's liability limitation provision remains an issue of material fact.

### Conclusion

For the forgoing reasons, Mediamath's Motion for Judgment on the Pleadings is **DENIED**.


**IT IS SO ORDERED.**

_____
**Judge Calvin L. Scott, Jr.**

---

[14] *J. A. Jones Const.*, 372 A.2d at 549.

7