SAMUEL FRANKLYN WOODCOCK v. JACOB UDELL and LEAH UDELL; PINE FOREST CORPORATION, a corporation of the State of Delaware, v. SAMUEL FRANKLYN WOODCOCK.

(*June* 5, 1953.)

CAREY, J., sitting.

*Robert W. Tunnell* and *Samuel R. Russell* (of the firm of Tunnell and Tunnell) for Samuel Franklyn Woodcock.

*Stewart Lynch* and *Florence E. Freeman,* and *Peter B. Zion* (of Philadelphia, Pa.) for Jacob and Leah Udell and Pine Forest Corporation.

Superior Court for Sussex County, No. 97, C. A. 1948, and No. 88, C. A. 1949.

CAREY, J.:

These cases arose out of the same transaction and have been consolidated for present purposes. A recital of the facts is necessarily somewhat lengthy, although the area of dispute concerning them is rather small. The pleadings, depositions, affidavits and answers to interrogatories furnish the basis for the present motions.

Woodcock is a real estate agent who frequently sells property by way of public auction. Jacob and Leah Udell are husband and wife. At all times pertinent hereto, the two of them owned all the stock of Pine Forest Corporation. They likewise owned all the stock of Isaacs and Steen Poultry Co. and about 50% of the stock of Eagle Frosted Foods Corp. Mr. Udell was president of all three corporations. Early in June 1947, he spoke to Mr. Woodcock about selling at public auction a poultry plant in Georgetown. After some discussion, it was agreed that Woodcock would sell not only the poultry plant but also a business or store property in Frankford and a dwelling and its contents in Frankford. The legal title to the store property was in the name of Mr. and Mrs. Udell; the dwelling and contents were owned either by the Udells or by Pine Forest Corporation; the legal title to the poultry plant was in the name of Isaacs and Steen Poultry Co., although all equitable interest was apparently in Eagle Frosted Foods Corp. The legal title to this poultry plant was transferred to Eagle Frosted Foods a few days before the auction was actually held.

On June 25, 1947, three contracts were executed under seal. They were prepared upon Woodcock's customary printed forms by a Mr. Johnson, who was then attorney for the Udells and the various corporations and who was also a stockholder and secretary of Eagle Frosted Foods Corp. Woodcock then took the papers to the home of the Udells where they were signed.

One contract is between "Pine Forest Corporation, party of the first part and S. Franklyn Woodcock, party of the second part". It provides for the sale of both the dwelling and contents and the business property in Frankford for a commission of ten per cent. It is signed by Pine Forest Corporation, Mr. and Mrs. Udell and Mr. Woodcock. The dwelling and contents were sold at auction on July 19, 1947, for $15,000, all of which was paid by the purchaser to Woodcock, who still holds it. The business property was sold at the same auction for $7,500. $2,500 of that purchase price was paid to Woodcock by the purchasers, and is still held by him. The remaining $5,000 has been attached by Woodcock in the hands of the purchasers as garnishees in Action No. 97.

Another contract, signed at the same time as the one above mentioned, is between Eagle Frosted Foods Corp. as party of the first part, and Mr. Woodcock as party of the second part. It is signed only by those two parties. It provides for the sale of the poultry plant at public auction for a ten per cent commission.

The third contract, executed at the same time, also provides for the sale of the poultry plant for the same commission. It names Isaacs and Steen Poultry Co. as party of the first part and Woodcock as party of the second part. It is signed by the corporation and Woodcock, and by Mr. and Mrs. Udell.

The poultry plant was also sold by Woodcock at public auction on July 19, 1947. Against this property, there was a mortgage upon which approximately $71,000 was owed. The mortgage was not then payable, however, and it was necessary

to sell the property subject to it. On this basis, the actual high bid at the sale was $110,000.

Very soon thereafter, Eagle Frosted Foods was adjudicated a bankrupt. Woodcock filed a claim against the bankrupt for over $18,000 upon the theory that he was entitled to a ten per cent commission on the amount actually bid plus the amount owed on the mortgage. Objections having been filed by the Trustee and by the bankrupt itself, the Referee decided this contention against Woodcock and allowed his claim only to the extent of $11,000, being ten per cent of the amount actually bid on the day of sale. The Referee's decision was, on Woodcock's petition, affirmed by the United States District Court for the District of Delaware. See *In re Eagle Frosted Foods Corp.*, 93 *F. Supp.* 414. Its decision was affirmed on appeal by the Court of Appeals for the Third Circuit. See 188 *F.* 2d 360. Woodcock made no effort to take the matter before the United States Supreme Court. A dividend based upon the claim as allowed was eventually paid to Mr. Woodcock out of Eagle's assets in the amount of $4,384.87.

In Action No. 97, Woodcock seeks to hold the Udells personally responsible for the additional commission which he claims. He seeks here to reargue that his commission for the sale of the poultry plant should be based upon the amount actually bid plus the mortgage indebtedness. He further contends that the Udells are personally liable by virtue of their signatures on the Isaacs & Steen contract and, in any event, by virtue of certain oral promises which he says were made to him by the Udells.

The defendants in that action deny any personal liability for any commission from the sale of the poultry plant. They have filed a counterclaim seeking to recover from Woodcock the difference between the sum of $2,500 which he received from the purchaser of the store property and his commission for selling it.

In Action No. 88, Pine Forest seeks to recover from Woodcock the full purchase price which was paid to him by the purchaser of the dwelling and contents, less his commission for selling it. Woodcock denies that this real estate was owned entirely by Pine Forest Corporation, but charges that a part of it was owned by the Udells personally. He further avers that the contents were owned exclusively by the Udells.

The briefs filed state the basic questions for decision to be these: (1) can Woodcock hold the Udells responsible for any part of the commissions earned by the sale of the poultry plant; (2) if so, are the Referee's findings of fact and rulings of law, affirmed as above mentioned, limiting Woodcock's claim to $11,000 binding on Woodcock in these actions? To these two questions must be added the subordinate one of whether or not Woodcock should be permitted to file the second amended complaint.

The written contracts contain nothing to show why the Udells signed them. They are not named as parties and they contend that the existence of their signatures at the bottom does not make them parties. They cite cases like *Blackmer v. Davis*, 128 *Mass.* 538, and *Shriner v. Craft*, 166 *Ala.* 146, 51 *So.* 884, 28 *L. R. A., N. S.*, 450.[1] Of course, the surrounding facts show that they were the owners of at least part of the property described in one of the three contracts. It was sold and they agree that Woodcock is entitled to his commission for selling it. The other contract which they signed covered a property in which they had no personal direct interest. The reason why they signed it could be discovered only by reference to extrinsic evidence, which they say is not admissible. They suggest that any liability on their part must be based upon a theory of suretyship or guaranty and that the reception of oral testimony is prevented by the statute of frauds which requires such contracts to be in writ-

---

[1]Whether the principle mentioned in these cases is the law in Delaware need not be decided here. A proper view might be that an ambiguity exists which may be explained by other evidence.

ing. 6 *Del. Code*, § 2714. Moreover, they suggest that the written contracts are complete on their face as between the parties named therein, are not ambiguous, and oral testimony would be improper since the parties have incorporated their oral agreement in the written one.

If the effect of the parol testimony is simply to show that the Udells were sureties or guarantors, there would be no doubt of its inadmissibility. A mere signature upon a paper which contains mutual promises of two other persons cannot be supplemented by parol testimony to prove that the third person intended to be surety for one or the other of the two named in the instrument. The authorities are uniform that a contract to pay the debt of another must not only be in writing but the writing must contain on its face enough to show that the person signing it was assuming that liability. If this were not true the contract could be established by parol testimony and the statute of frauds would be circumvented. 49 *Am. Jur.* 634; *Cf. T. B. Cartmell Paint & Glass Co. v. Cartmell,* 7 *W. W. Harr.* 528, 186 *A.* 897. The cases cited by Woodcock do not disagree with this principle; they are all instances where promises were made by only one party in favor of another and the paper contained the signature of a third person. Obviously, in that situation, the third person could only have intended to insure the performance of those promises by the one person who made them. In such a situation, the statute of frauds was satisfied. *Cockrell v. Williams,* 191 *Mo. App.* 246, 177 *S. W.* 1091; *Scheid v. Leibschultz,* 51 *Ind.* 38; *Gloucester Mutual Fishing Ins. Co. v. Boyer,* 294 *Mass.* 35, 200 *N. E.* 557. This paper is not of that type, but contains promises on the part of both the parties named at the beginning of the contract.

Woodcock, however, denies that he is bound to a theory of suretyship or guaranty because he says the evidence will warrant a finding of a direct promise on the part of the Udells to pay this commission or, in other words, that there was a direct undertaking on their part to be primarily responsible to him. He points out that the Udells were the sole stockholders

of Isaacs and Steen Poultry Co.; that they owned about half of the stock of Eagle Frosted Foods Corp. and had advanced money to it as creditors; and that they were officers and directors of both companies. He says, therefore, that the agreement was entered into for their personal benefit and the promise made to Woodcock by them did in part induce him to undertake the sale of the property. He contends that that agreement may be proven by oral testimony, notwithstanding the existence of the writings mentioned.

It is this contention, which, in my opinion, prevents the entry of summary judgment at this stage of the case, at least in Action No. 97. In *Davis v. Patrick*, 141 *U. S.* 479, 12 *S. Ct.* 58, 35 *L. Ed.* 826, a somewhat analogous situation arose. The Court held the verbal promise was to be personally and primarily responsible and not within the statute of frauds where the promisor received a personal benefit from the performance. See 2 *Williston on Contracts* 1342 etc. Under one version of Woodcock's testimony now in the record, it could be found that the Udells had such a personal interest in the subject matter as would justify a holding that their verbal promise to be personally responsible for this commission was not a promise to pay the debt of another, and was therefore not within the statute. Determination of the matter is for the trier of fact. 2 *Williston on Contracts* 1340. Their signatures on the agreement do not bar proof of the alleged oral promise, because the written contract does not purport to be a complete memorial of whatever agreement they as individuals had with Woodcock.

Woodcock's testimony with respect to the making of an oral promise is vehemently denied by the Udells. Furthermore, parts of it are susceptible of more than one interpretation. Whether it was made at all, and, if so, whether it was a promise to bind themselves primarily or secondarily, are matters which cannot now be resolved. It is therefore impossible to grant summary judgment in favor of the Udells.

As to the extent of their possible liability, the facts of this case fall within the letter and spirit of the holding in *Coca-Cola Co. v. Pepsi-Cola Co.*, 6 *W. W. Harr.* 124, 172 *A.* 260. It is clear that Woodcock had full opportunity to raise, and did raise, in the Bankruptcy Court the question of whether he was entitled to a commission on the amount bid at the sale or on the amount bid plus the mortgage indebtedness. This was decided against him, and under the reasoning of the *Pepsi-Cola* case, the matter is *res adjudicata.*

Woodcock disclaims any intention of holding Pine Forest Corp. responsible for anything beyond the commission on the property actually owned by it. If it were clear, as the Udells argue, that this corporation exclusively owned the dwelling property and its contents, there would seem to be no defense whatever to its action in No. 88. However, there is a doubt in the record concerning ownership of the personalty. As to the realty, the only substantial evidence of legal ownership relied upon is the affidavit of H. Edward Maull, an attorney who examined the records of Sussex County. That affidavit does not clearly show whether ownership was in the corporation or in the Udells. One or two parts of his affidavit indicate that it was owned entirely by Pine Forest but another part indicates that it was owned either by Pine Forest or by the Udells. Woodcock's answer avers that a part of it was owned by each. It may well be that this difficulty can be straightened out before trial and the parties will be given an opportunity to do so if they desire. If it should clearly appear that the corporation was the sole owner of the dwelling and its contents, summary judgment could be entered in favor of Pine Forest in that case. Unless this can be made to appear, the issue would have to be settled otherwise. It would be necessary to do so, because whatever part of the proceeds may actually belong to the Udells would be subject to any liability which they may have in No. 97. Again, recovery in No. 88 by the corporation for monies not belonging to it, would of course be improper.

 We turn now to the question of filing the second amended complaint in No. 97, to which the Udells object. Ordinarily, the sufficiency of pleadings should not be tested on a motion to amend, at least where the motion to amend is the sole matter before the Court. *Rupe v. Associated Electric Co., D. C.*, 6 *F. R. D.* 309. In the present case, however, the motion to amend was argued at the same time as the motion for summary judgment, and the new matters included in the second amended complaint have been fully covered in the affidavits and in the arguments. Under these conditions, there seems to be no reason why the Court may not consider the sufficiency of the new allegations. 3 *Barron and Holtzoff* 92.

 This amendment seeks to set up two grounds of action which are not contained in the first amended complaint. One is a charge that the defendants are guilty of fraud upon the plaintiff "by using the separate existences of said corporations to evade personal liability". In my opinion, there is nothing in the affidavits or depositions to justify this charge since Woodcock had full knowledge of these "corporate existences" and cannot be said to have been misled.

The other additional charge deals with promises alleged to have been made to Woodcock on the day of sale by Udell on behalf of himself and his wife. According to Woodcock's affidavit, after the Frankford properties had been sold, a conference took place between Woodcock and Udell and other interested individuals, at which Woodcock says he first learned that the poultry plant could not be sold clear of the mortgage and that the sale would have to be subject thereto. He says that he demurred to this, but consented to go on with the sale after Mr. Udell and Mr. Johnson assured him that his commission would not be affected, "that is to say, that the commission would be based on the amount bid plus the amount of the mortgage assumed by the eventual purchaser". Then follows the statement that "it was fully understood by Jacob Udell that in making this assurance he was binding himself and his wife personally to pay Woodcock's commission as well as binding the corporations of

which he was President". At no place in the testimony now before the Court is there any evidence that Mr. Udell had any authority to bind Mrs. Udell personally. She was not present at the meeting referred to.

What was said at this conference could have possible significance here only in three ways. It may or may not be admissible for the purpose of corroborating the existence of a prior promise of the Udells to be personally responsible. Whether it is so admissible need not now be decided; if it is, there would still be no point in amending the complaint in this respect because the first amended complaint sufficiently alleges the existence of the prior promise and the statements made on this date would simply be evidence supporting what is already pleaded therein.

The plaintiff does not rely upon the foregoing reason, but argues that the amendment is proper for the other two possible purposes. One is that the conversation then held warrants a finding that the amount of commission was to be based upon the amount bid plus the mortgage debt. This angle of the case was specifically ruled upon in the bankruptcy proceedings and is *res adjudicata*, as pointed out above. The other reason for the amendment is that the statements mentioned constituted a new promise on the part of the present defendants to be personally responsible for this commission, even if it be found that they had made no such prior promise. The difficulty with this point is that the *admissible evidence* contained in the plaintiff's affidavit does not support the contention. The only direct averment of fact is that "they assured Woodcock that it (the sale subject to the mortgage) would not affect his commission; that is to say, that the commission would be based on the amount bid plus the amount of the mortgage assumed by the eventual purchaser". The affiant's statement to the effect that Udell understood that in making the assurance that he was binding himself and his wife personally to pay the commission is not admissible evidence for it simply represents his idea of what was in Udell's mind. No statements of Udell or any other person are set forth

80

to justify this conclusion; certainly, the "assurance" mentioned above does not justify it.

Rule 56(e) provides that affidavits shall be made on personal knowledge, must set forth such facts as would be admissible in evidence, and must show affirmatively that the affiant is competent to testify to the matters stated therein. An affidavit which fails to meet this test cannot be relied upon to show the existence of a disputed fact. 3 *Barron & Holtzoff* 93 etc.; *Seward v. Nissen, D. C.,* 2 *F. R. D.* 545. On a motion for summary judgment, the party opposing that motion is duty bound to disclose evidence which will demonstrate the existence of a genuine issue of fact for submission to the jury, if summary judgment is to be denied. *Frank C. Sparks Co. v. Huber Baking Co.,* 9 *Terry* 9, 96 *A.* 2d 456. In short, plaintiff's affidavit fails to show the making of a new promise by the Udells on the date mentioned.

No sufficient reason for filing the second amended complaint has been shown, and leave to file it will be denied.