Norman BORISH, Plaintiff,

v.

David C. GRAHAM, Joseph R. Wick, Mark D. Smith, and John F. Meredith, Defendants.

Civ. A. No. 91C–07–159.

Superior Court of Delaware, New Castle County.

Submitted: Jan. 31, 1994.

Decided: Feb. 18, 1994.

Michael J. Isaacs, Esq. of Snyder & Isaacs, Wilmington, for plaintiff.

James T. Vaughn, Jr. of Schmittinger and Rodriguez, P.A., Dover, for defendants.

## OPINION

GEBELEIN, Judge.

This is the Court's decision on defendants' motion for summary judgment. For the reasons set forth herein, defendants' motion is GRANTED.

Defendants were the founders, directors, officers and principal stockholders of Duck

Creek Homes, Inc. (D.C. Homes), formerly a Delaware corporation. Plaintiff, Norman Borish, a former officer of D.C. Homes, made a loan to D.C. Homes in April of 1990, in the amount of $45,000.00. In order to finance the loan, plaintiff took out a home equity loan on his personal residence. Also in April of 1990, a law firm completed a private placement memorandum for D.C. Homes, which was created for the purpose of attracting investors to the corporation. Plaintiff and all defendants attended a meeting at the law offices to review the memorandum before it was distributed to potential investors. After the meeting, the parties agreed that they had a final and enforceable document. The final memorandum contained the following paragraph:

> As noted above, Norman Borish, an officer of D.C. Homes, has loaned D.C. Homes $45,000. The Borish loan will bear interest at the rate designated by the Bank as its 'Prime Rate', plus 1%, and will change as the Bank's Prime Rate changes. The Borish loan will be amortized on a 15–year schedule, and installments of principal and interest will be payable to Mr. Borish monthly. The entire principal balance of the Borish loan will be due and payable on April 1, 1991, together with all accrued and outstanding interest. The Borish loan is secured by the personal guarantees of the Founders.[1] D.C. Homes intends to use the proceeds of the Borish loan for working capital purposes.

There were *no* signatures on the final private placement memorandum, nor were there any other documents, memoranda or notes in existence pertaining to the loan.

For the next twelve months, D.C. Homes made payments on the loan to plaintiff. These payments corresponded to the monthly amounts due on plaintiff's home equity loan. In May of 1991, D.C. Homes filed for bankruptcy under Chapter 7 of Title 11 of the United States Code. At that time, the balance due on the loan was $39,937.15.

Plaintiff filed a complaint in this Court in July of 1991, seeking repayment of the loan from defendants personally, in accordance with their personal guarantee in the private placement memorandum. Defendants now move for summary judgment on the ground that plaintiff's claim is barred by the statute of frauds.

■■■ The standard for deciding a motion for summary judgment is well settled in Delaware. A motion for summary judgment will be granted if the evidence reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c); *Empire of America v. Commercial Credit*, Del.Supr., 551 A.2d 433 (1988). The moving party bears the burden of showing that no genuine issue of material fact exists. *Moore v. Sizemore*, Del.Supr., 405 A.2d 679 (1979). The record must be viewed in the light most favorable to the non-moving party. *Merrill v. Crothall–American, Inc.*, Del.Supr., 606 A.2d 96 (1992).

■■■ Defendants rely on Delaware's statute of frauds, 6 *Del.C.* § 2714(a),[2] in support of their argument. A contract to pay the debt of another must not only be in writing, but the writing must contain on its face enough to show that the person signing it was assuming liability. *Woodcock v. Udell*, Del.Supr., 97 A.2d 878 (1953). The statute of frauds clearly requires that the writing must be signed. *Acierno v. McCall*, Del.Supr., 264 A.2d 513 (1970). Defendants argue that their personal guarantee was a promise to answer for the debt of another and thus falls within the statute of frauds. Because defendants did not sign the memorandum, they contend that the statute of frauds precludes

---

**1.** The Founders were identified elsewhere in the document as the four defendants, and one other man who later left D.C. Homes.

**2.** 6 *Del.C.* § 2714(a) provides in pertinent part: No action shall be brought to charge any person upon any agreement made upon consideration of marriage, or upon any contract or sale of lands ... or any agreement that is not to be performed within the space of one year from the making thereof, *or to charge any person to answer for the debt, default or miscarriage, of another* ... unless the contract is reduced to *writing*, or some memorandum, or notes thereof, are *signed by the party to be charged* therewith, or some other person thereunto by him lawfully authorized in writing....

recovery and therefore, summary judgment should be granted in their favor.

 The first issue to be addressed is whether defendants' guarantee was a promise to answer for the debt of another, and therefore, within the statute of frauds. The personal guarantee of defendants was clearly a promise to answer for the debt of the corporation; thus it is within the statute of frauds. An agreement is not within the statute of frauds, however, where the promisor receives a personal benefit. *Woodcock, supra,* 97 A.2d at 881. There is no evidence of a personal benefit by the defendants in this case. It is not disputed that the private placement memorandum specifically provided that the proceeds of the loan would be used by D.C. Homes for working capital purposes. The loan was made to D.C. Homes, and payments to plaintiff were made by D.C. Homes. There is no indication that any of the defendants benefitted from this loan, other than in their capacity as officers and shareholders of D.C. Homes. The Court finds no evidence indicating that defendants' loans or investments in D.C. Homes had a better status because of plaintiff's loan. *See, Econofreeze v. International Pipefreezing Inc.,* Del.Super. C.A. No. 84C–JL–14, Taylor J. (Apr. 22, 1985) (where defendant was not denied the statute of frauds defense based on personal benefit, because there was no evidence that defendant recouped any of the money which he loaned to the corporation, and no showing that his loans or investment had a better status because of plaintiff's deliveries to the corporation).

 Plaintiff contends that because the loan was to be repaid within one year, it falls within an exception to the statute of frauds. Section 2714(a) of Title 6 of the *Delaware Code,* provides essentially four situations in which an agreement must be in writing and signed by the party to be charged in order to be enforceable: agreements for marriage; agreements that cannot be performed within one year; agreements for the sale of land; and agreements to answer for the debt of another. The statute thus implies that agreements which can be performed within one year do not need to be in writing. *See, Haveg Corp. v. Guyer,* Del.Supr., 211 A.2d

910 (1965) (holding that the statute of frauds does not apply to a contract which may, by any possibility, be performed within one year). Plaintiff argues that because he loaned the money to D.C. Homes during April of 1990, and the loan was due on April 1, 1991, the agreement would be performed in less than one year, and was therefore, outside the boundaries of the statute of frauds.

There is no law, however, to support such a contention. Section 2714(a) specifically provides that no action shall be brought to charge any person upon *any* agreement made upon consideration of marriage, the sale of land, agreements not to be performed in one year and promises to answer for the debt of another unless in writing and *signed* by the party to be charged. 6 *Del.C.* § 2714(a) (Emphasis added). All four types of agreements specified in section 2714(a) must therefore be in writing and signed by the party to be charged to be enforceable, regardless of whether they can be performed within one year. The legislature specified that each of these agreements must meet certain requirements to be enforceable. To hold otherwise would be contrary to the expressed legislative intent.

 Plaintiff also argues that defendants are estopped from asserting the statute of frauds as a defense. The doctrine of equitable estoppel may be invoked "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." *Waggoner v. Laster,* Del.Supr., 581 A.2d 1127, 1136 (1990), (quoting *Wilson v. American Ins. Co.,* Del.Supr., 209 A.2d 902, 903–904 (1965)). The party claiming estoppel must be able to show that he lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; relied on the conduct of the party against whom the estoppel is claimed; and suffered a prejudicial change of position as a result of his reliance. *Id.* at 1136. Promissory estoppel, however, concerns future events, and will create a cause of action if there is proof that there was a promise; that plaintiff relied on the promise; and that he took action to his detriment. *Haveg Corp. v. Guyer,* Del.Supr.,

226 A.2d 231 (1967). Mere expressions of opinion, expectation or assumption are insufficient. *Reeder v. Sanford School, Inc.*, Del.Super., 397 A.2d 139 (1979).

■ Plaintiff contends that he made the loan in reliance on defendants' promises to personally guarantee the loan. The evidence reveals, however, that plaintiff only discussed the loan with Mr. Graham before making the loan. Plaintiff does not claim that any verbal or written assurances of personal guarantees were made to him by Mr. Graham or any of the other defendants *before* he made the loan. In fact, the following colloquy occurred at plaintiff's deposition:

Q. Are you saying, then, that the facts upon which you base your position that they are personally indebted to you is based on the statement in the offering memorandum?

A. Yes.

Q. Is it based solely on that?

A. Primarily on that. I had some, I would say, verbal assurances on that, that they would stand by it.

Q. Verbal assurances?

A. From David. After the company folded up, I sent several letters to each of them, made several phone calls, never of which any were returned. And I wanted to know where I actually stood and where they stood. In some cases, I did make connection with a phone call here or there. In most cases, I didn't. I never got a reliable or sound response to the two letters that I wrote.

(Borish Dep. at 28).

In response to whether there were any discussions about personal guarantees between plaintiff and Mr. Graham at the time the $45,000 was loaned, plaintiff stated: "Mike, I believe I had assurances. I don't think there were any direct assurances. I felt I had assurances." (Borish Dep. at 41). Mr. Graham also testified at his deposition that when working on plaintiff's employment agreement in May or June of 1990, he asked plaintiff if he wanted to pursue anything about personal guarantees on the loan. Mr. Graham testified that plaintiffs' response was: "[n]o, I'm not worried about it." (Gra-

ham Dep. at 17). In addition, the other three defendants testified that they never agreed to personally guarantee the loan to Mr. Borish. (Meredith Dep. at 19; Smith Dep. at 25; Wick Dep. at 12–13).

The Court finds that there is no evidence of any promises of personal guarantee made to plaintiff before plaintiff loaned money to the corporation. Plaintiff approached the defendants after the corporation filed for bankruptcy and requested repayment, but he could not recall any specific conversations about personal guarantees with the defendants before he made the loan. Plaintiff therefore did not rely to his detriment and change his position based on a promise by the defendants. Consequently, estoppel is not available to plaintiff as a defense to the statute of frauds.

■ Plaintiff finally contends that if the Court finds that the statute of frauds does apply, the Court should find that the document was "constructively" signed because defendants approved it as an official offering to the public, and intended to be bound by it. Courts have addressed the issue of what is needed to satisfy the requirement of a signature. *See MacKnight v. Pansey*, 122 R.I. 774, 412 A.2d 236 (1980) (holding that satisfactory evidence must show that the signature on a memorandum was affixed with the intent to authenticate the contents of the memorandum); *Hessenthaler v. Farzin*, 388 Pa.Super. 37, 564 A.2d 990 (1989) (holding that there is no requirement that a signature be in any particular form; the focus is on whether there is some reliable indication that the person to be charged with performing under the writing intended to authenticate the writing).

Delaware's legislature has defined "signature" as "any symbol executed or adopted by a party with present intention to authenticate a writing." 6 *Del.C.* § 1–201(39). The memorandum in this case, however, did not contain any signatures or other symbols of defendants, indicating an intent that such symbols or other markings were made to authenticate the document. Although defendants' names exist in the memorandum, the Court does not find that they were placed in the

memorandum for the purpose of authenticating the document. Furthermore, none of the defendants remember discussing or agreeing to this paragraph during the final meeting. Mr. Graham testified that he or plaintiff would have been responsible for inserting this paragraph, but he does not remember drafting the paragraph. Additionally, it is not disputed that the parties did not go over the memorandum page by page with the drafting attorneys. Therefore, it does not appear that defendants intended to be bound by the paragraph in the memorandum. Because no units were sold, the private placement memorandum was never filed with any state or federal agencies.

Even in viewing the facts of this case in the light most favorable to plaintiff as the non-moving party, the facts are insufficient to reveal a genuine issue of material fact for trial. The agreement in this case by defendants qualifies as a promise to pay the debt of another. In accordance with 6 *Del.C.* § 2714(a), a promise to pay the debt of another must be in writing and signed by the party to be charged in order to be enforceable. The private placement memorandum lacks any signatures and is, therefore, unenforceable as it does not comply with the statute of frauds.

Based on the foregoing, the motion for summary judgment of defendants David C. Graham, Joseph R. Wick, Mark D. Smith, and John F. Meredith must be **GRANTED.**