# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

J.M.L. INC. & LAWRENCE GILLEN, )
)
Appellants, )
)
v. ) C.A. No. N15A-06-006 FWW
)
)
SHOPPES OF MOUNT PLEASANT, )
LLC, )
)
Appellee. )

Submitted: July 19, 2016
Decided: October 14, 2016

## MEMORANDUM OPINION AND ORDER

On Appeal from the Court of Common Pleas:
**AFFIRMED in part, REVERSED in part**.

Leo John Ramunno, Esquire, 5149 W. Woodmill Drive, Suite 20, Wilmington, Delaware 19808; Attorney for Appellants.

Josiah R. Wolcott, Esquire, Connolly Gallagher, LLP, 267 East Main Street, Newark, Delaware 19711; Attorney for Appellee.

**WHARTON, J.**

# I. INTRODUCTION

J.M.L, Inc. ("J.M.L.") and Lawrence Gillen ("Gillen") (collectively referred to as "Appellants") filed a Notice of Appeal on July 19, 2016, requesting a review of the Court of Common Pleas' decision that Gillen was a guarantor of a commercial lease. Appellants also request a review of the trial court's calculation of damages and its decision to grant attorney's fees to Appellee.

In considering this appeal, the Court must determine whether the trial court's findings are supported by substantial evidence and free from legal error. Upon consideration of the pleadings before the Court and the record below, the Court finds that there is substantial evidence to support the trial court's decision that Gillen was a guarantor of the commercial lease, and the trial court did not make a legal error in reaching its decision. Regarding the trial court's decision to grant attorney's fees, the Court also finds that no error occurred. However, the trial court erred in its calculation of damages. Accordingly, the Court of Common Pleas' decision is **AFFIRMED in part** and **REVERSED in part.**

# II. FACTUAL AND PROCEDURAL CONTEXT

Shoppes of Mount Pleasant, LLC ("Shoppes") owns commercial real estate at the intersection of Delaware Route 896 and Boyd's Corner Road in Middletown,

2

Delaware.[1]  The real estate consists of a gas station, a Dunkin' Donuts, and a strip mall.[2]

Robert Wittig ("Wittig") oversees the operation of the real estate. Specifically, Wittig negotiates leases with interested tenants.[3]  Gillen, who manages J.M.L., contacted Wittig about leasing a section of the strip mall to J.M.L. because J.M.L. sought to open a liquor store.[4]  Soon thereafter, Wittig agreed to lease 2,800 square feet of the strip mall ("Premises") to J.M.L.[5]

The commercial lease ("Lease") shows that J.M.L. and Shoppes agreed upon a rent of $3,747.33 per month with a 2.5 percent annual increase.[6]  The term of the Lease was for five years.[7]  However, Article 30 provides J.M.L. the Option to Renew the Lease for two additional five-year periods by giving Shoppes ninety days written notice prior to the expiration of the existing term.[8]  If J.M.L. were to renew the Lease, Article 30 therein states that "all other terms and conditions of the lease to remain the same."[9]

---

[1] Tr. 20:8-10; 25:9-10.
[2] Tr. 21:4-7.
[3] Tr. 52:10-17.
[4] Tr. 100:5-9.
[5] Tr. 25:7-8; 52:21-23; 53:1.
[6] Appellants' Ex. 1.
[7] Id.
[8] Id.
[9] Id.

3

Additionally, the Lease contains a signature line for J.M.L.'s guarantor to sign.[10] Article 22(A) contains the following language regarding the guarantor's liability: "If Tenant shall consist of more than one person or if there shall be a guarantor of Tenant's obligations, then the liability of all such persons, including the guarantor, if any shall be joint and several . . . ."[11]

On February 25, 2005, Gillen met Wittig at Wittig's home to sign the Lease.[12] While discussing the terms of the Lease at Wittig's kitchen table, Wittig testified that he told Gillen that Gillen had to sign the Lease as a personal guarantor.[13] Wittig testified that Gillen accepted this condition.[14] Subsequently, Wittig signed on behalf of Shoppes, and Gillen signed on behalf of J.M.L.[15] Gillen also signed the Lease as a guarantor of J.M.L. Wittig's wife, Connie Wittig, testified to witnessing both of Gillen's signatures.[16] Beneath the guarantor's signature line, there is an additional line for the guarantor to insert his or her social security number; however, Gillen's number is absent from the page.[17] On the very next page, which is titled "Addendum to Lease," Gillen signed on the line as the

---

[10] *Id.*
[11] *Id.*
[12] Tr. 55:18-19.
[13] Tr. 59:6-16
[14] *Id.*
[15] Tr. 55-57; 103:12-23; 104:1-4.
[16] *Id.* Connie Wittig did not sign as a witness to the personal guarantor, who was also Gillen, because she felt that it was unnecessary for her to witness the same person twice.
[17] Appellants' Ex. 1.

4

"TENANT/Guarantor."[18]  On April 1, 2005, J.M.L. took possession of the Premises, and operated the liquor store for the entire five-year term of the Lease.[19]

After the initial five-year term had expired, J.M.L. continued to operate its liquor business on the Premises.  However, J.M.L. did not provide ninety days written notice to Shoppes that it was renewing the Lease.[20]  In such circumstances, the Lease provides Shoppes with two options:  First, Shoppes could terminate the Lease without any notice to J.M.L under Article 30.[21]  Second, Shoppes could require J.M.L. to pay double the monthly rent at the rate that existed prior to expiration of the Lease under Article 18.[22]  Instead of either doubling J.M.L.'s monthly rent or evicting it, Shoppes increased J.M.L's monthly rent by 2.5 percent as if J.M.L. had exercised its Option to Renew the Lease.  J.M.L. continued to pay rent and adhere to the Lease's conditions for approximately two years after the original term of the Lease expired.[23]

In 2011, Shoppes and J.M.L. agreed to a Memorandum of Lease Agreement ("Memorandum").  The Memorandum is dated June 23, 2011, but was not consummated until May 2012.[24]  The Memorandum states that Shoppes granted

---

[18] *Id.*
[19] Appellants' Ex. 3.
[20] Tr. 107:15-23.
[21] Appellants' Ex. 1.
[22] *Id.*
[23] Tr. 34:6-8; 123:10-17.
[24] Tr. 30:8-12; 33:8-23.  The Memorandum was not consummated until May 2012 because Shoppes had difficulty obtaining a signature from Gillen.

J.M.L. the Option to Renew the Lease. Sandra Kubiak ("Kubiak"), who is a property manager for Shoppes and who drafted the Memorandum, testified that the intent of the Memorandum was to retroactively apply the Lease to June 1, 2010 as if J.M.L. had properly exercised the Option to Renew under Article 30.[25] Thus, the Memorandum was intended to renew the Lease and to have "all other terms and conditions . . . remain the same."[26] Gillen signed the Memorandum, but the signature line does not indicate whether Gillen signed only on behalf of J.M.L. or whether he also signed in his individual capacity.[27]

In early 2013, Ralph Larson ("Larson"), who is one of Wittig's partners, met with Gillen to discuss J.M.L.'s delinquent rent and other fees.[28] As of December 31, 2012, the ledger shows that J.M.L. owed Shoppes $15,933.55.[29] Larson testified that he told Gillen that Shoppes would be "willing to work with him" by crediting his account for half of what he owed, which amounted to $6,733.55.[30] After Gillen received this credit, Larson testified that Gillen eventually caught up on rent from 2012, but was still behind on rent in 2013.[31]

Several months later, Gillen sold the liquor store. Prior to closing the sale, Larson testified that Gillen made personal guarantees to him that any outstanding

---

[25] Tr. 45: 21-23; 46:1-4.
[26] Appellants' Ex. 1.
[27] Appellants' Ex. 4.
[28] Tr. 76:16-20; 77:5-9.
[29] Appellants' Ex. 5.
[30] Tr. 77:7-23.
[31] Tr. 78:8-10.

debts would be satisfied upon the sale of the liquor store.[32] However, Shoppes contended that it never received these payments from Gillen.

On May 29, 2014, Shoppes filed a complaint alleging that Appellants breached their contractual duties by failing to make payments under the Lease.[33] Shoppes also alleged that Gillen was personally liable for the amount owed because he signed as a guarantor.[34] Shoppes thus sought $26,286.75 in damages, plus attorney's fees and costs.[35] On June 30, 2014, Appellants filed an answer denying these allegations.

On January 12, 2015, the Court of Common Pleas held a trial.[36] On May 11, 2015, the trial court found that Gillen personally guaranteed the Lease and awarded damages in the amount of $21,984.80 to Shoppes.[37] The trial court also required Shoppes to submit proof of reasonable attorney's fees to it within thirty days of its decision.[38] On August 4, 2015, the trial court ordered that Shoppes receive

---

[32] Tr. 81:5-10.

[33] Appellee's Compl.

[34] Id. at 2.

[35] Id.

[36] A trial was also held on February 2, 2015 because two key witnesses were unavailable on the original trial date.

[37] Shoppes of Mount Pleasant, LLC v. J.M.L., Inc., 2015 WL 3824118, at * 4–7 (Del. Com. Pl. May 11, 2015).

[38] Id. at *7.

attorney's fees in the amount of $20,132.00 and costs in the amount of $1,933.74.[39]

Appellants appeal the trial court's decisions.

### III. THE PARTIES' CONTENTIONS

Appellants make the following four arguments: First, Appellants argue that Gillen did not sign the Lease as a guarantor.[40] Second, Appellants argue that, even if Gillen signed the Lease as a guarantor, Gillen did not continue to be a guarantor after the initial term of the Lease expired.[41] Third, Appellants argue that the trial court's calculation of damages in the amount of $24,984.80 was clearly erroneous.[42] Fourth, Appellants argue that the trial judge clearly erred when it awarded Shoppes attorney's fees and costs.[43]

In response, Shoppes first argues that Appellants failed to cite to any evidence in the record that supports their claim that Gillen did not sign the Lease as a guarantor.[44] Second, Shoppes argues that the trial court "correctly found that Gillen was a continuing guarantor based on the mutual agreement of the parties in the Memorandum."[45] Third, Shoppes contends that the trial court's calculation of damages should be affirmed because it "is sufficiently supported by the record and

---

[39] *Shoppes of Mount Pleasant, LLC v. J.M.L., Inc.*, No. CPU4-14-001415, at 9 (Del. Com. Pl. Aug. 4, 2015).
[40] Appellants' Opening Br., D.I. 13, at 4.
[41] *Id.* at 6.
[42] *Id.* at 11.
[43] *Id.* at 13.
[44] Appellee's Answering Br., D.I. 14, at 10–11.
[45] *Id.* at 11.

8

is the product of an orderly, logical and deductive process."[46]  Finally, Shoppes contends that the trial court "engaged in a reasoned and detailed review of the fee request," and therefore, the trial court did not abuse its discretion.[47]

## IV. STANDARD OF REVIEW

The standard of review by the Superior Court for an appeal from the Court of Common Pleas is the same standard applied by the Supreme Court to appeals from the Superior Court.[48]  In addressing appeals from the trial court, this Court is limited to correcting errors of law and to determining whether substantial evidence exists to support factual findings.[49]  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[50]  If factual findings are "sufficiently supported by the record and are the product of an orderly and logical[ly] deductive process," then they will not be challenged.[51]  Questions of law are reviewed *de novo*.[52]

---

[46] *Id.* at 13.

[47] *Id.* at 15.

[48] *Robert J. Smith Co., Inc. v. Thomas*, 2001 WL 1729143, at *2 (Del. Super. Dec. 10, 2001).

[49] *Henry v. Nissan Motors Acceptance Corp.*, 1998 WL 961759, at *1 (Del. Super. Oct. 21, 1998) (citing *Shahan v. Landing*, 643 A.2d 1357, 1359 (Del. Super. 1994)).

[50] *Thomas*, 2001 WL 1729143, at *2 (citing *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).

[51] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).

[52] *Henry*, 1998 WL 961759, at *1

9

# V. DISCUSSION

## A. The Trial Court Did Not Err When It Found that Gillen Was a Guarantor of the Lease.

A guaranty contract is an "'agreement to pay the debt of another' in the event that the primary debtor defaults."[53] Under Delaware's statute of frauds, such an agreement shall be unenforceable unless it is reduced to writing and is signed by the party to be charged.[54] As courts in this jurisdiction have noted, "a contract to pay the debt of another must not only be in writing but the writing must contain on its face enough to show that the person signing it was assuming that liability."[55]

Appellants argue that the guaranty within the Lease does not satisfy the statute of frauds for two reasons: First, Appellants argue that Gillen's signature was forged, and therefore, the signature requirement of the statute of frauds is unfulfilled.[56] Second, Appellants argue that because the Lease has only two

---

[53] *Chestnut Hill Plaza Holdings Corp. v. Parkway Cleaners, Inc.*, 2011 WL 1885256, at *5 (Del. Super. May, 17, 2011) (quoting *Falco v. Alpha Affiliates, Inc.*, 1997 WL 782011, at *5 (D. Del. Dec. 10, 1997)).

[54] 6 *Del. C.* § 2714(a) ("No action shall be brought to charge any person . . . to answer for the debt, default, or miscarriage, of another, in any sum of the value of $25 and upwards, unless the contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith, or some other person thereunto by the party lawfully authorized in writing . . . .").

[55] *Woodcock v. Udell*, 97 A.2d 878, 881 (Del. Super. 1953). *See CBA Collection Services, Ltd. v. Potter, Crosse & Leonard, P.A.*, 1996 WL 527214, at *3 (Del. Super. Aug. 14, 1996) (citing *Woodcock*, 97 A.2d at 881).

[56] Appellants' Opening Br., D.I. 13, at 5.

references to a guarantor, the Lease did not provide enough detail for Gillen to know that he was assuming J.M.L.'s liability.[57]

The Court does not find these arguments to be persuasive. First, Appellants have not provided any evidence to support the contention that Gillen's signature was forged. The trial court found that both Wittig and his wife saw Gillen sign the Lease as a guarantor in their home on February 25, 2005. While Gillen testified that he did not sign the Lease at any time, the trial court did not find Gillen's testimony to be credible. Without any evidence in the record suggesting that the trial court's findings were clearly wrong, the Court must accept them.

Second, the Court finds that the Lease contains sufficient information to inform Gillen of his personal liability. Article 22(A) contains the following language regarding the guarantor's liability: "If Tenant shall consist of more than one person or if there shall be a guarantor of Tenant's obligations, then the liability of all such persons, including the guarantor, if any shall be joint and several . . . ."[58] Additionally, on the last page of the Lease, there is a signature line specifically for a guarantor. This information makes clear that if someone were to sign the Lease as a personal guarantor, then he or she would be jointly and severally liable for any of the primary debtor's obligations. By signing the Lease, then, Gillen knew, or

---

[57] *Id.* at 4.
[58] Appellants' Ex. 1.

11

should have known, that he was assuming the liability of J.M.L. in the event that J.M.L. did not pay its monthly rent.

Appellants rely heavily on *Falco v. Alpha Affiliates, Inc.* to undermine this analysis.[59] Appellants contend that *Falco* stands for the proposition that the absence of a guarantor's social security number from a guaranty contract renders it void.[60] However, this interpretation of *Falco* is misplaced.[61] Instead, *Falco* suggests that a separate guaranty contract is unnecessary, so long as "some guarantee language is written on the contract and signed by the person to be charged."[62]

Here, the fact that Gillen's social security number is absent from the Lease does not determine the validity of the guaranty contract. Gillen, who is the person to be charged, signed the Lease in his individual capacity, and the Lease contained sufficient guaranty language to inform Gillen of his contractual obligations. Therefore, the trial court did not err when it found that the Lease satisfied the statute of frauds.

---

[59] 1997 WL 782011 (D. Del. Dec. 10, 1997).
[60] Appellants' Opening Br., D.I. 13, at 4.
[61] In *Falco*, a landlord leased commercial real estate to a corporation. *Falco*, 1997 WL 782011, at *1. The defendants signed in their corporate capacity, and they also signed in their individual capacities as "guarantors" with their social security numbers written below the signature lines. *Id.* No other language in the lease discussed the terms of the guaranty. *Id.* at *5. The district court found that the defendants' signatures alone were enough hold them personally liable for the corporation's debts. *Id.*
[62] *Id.* at *8.

**B. The Trial Court Did Not Commit Legal Error When It Found that Gillen Continued To Be a Guarantor of the Lease After Signing the Memorandum.**

Generally, a guarantor's liability for the primary debtor's contractual obligations lasts for the entire term of the lease.[63] When the lease terminates, so too does the guarantor's liability.[64] Thus, when a tenant remains on the premises after the lease has expired, "a new tenancy 'replaces' the prior lease and the guarantor has no obligation under the new agreement."[65] However, if the guarantor expressly consents to an extension or renewal of the lease, then the guarantor is not discharged from his or her obligations to the landlord.[66]

Appellants argue that when the Lease expired on April 5, 2010, Gillen's obligations as a guarantor expired as well.[67] Gillen did not provide Shoppes ninety days written notice prior to the expiration of the existing term. Consequently, when the Lease expired, Gillen's obligations as a personal guarantor also expired. While J.M.L. remained on the Premises thereafter, Appellants contend that a new tenancy replaced the Lease and absolved Gillen from his secondary liability to Shoppes.[68]

---

[63] *See Wilmington & Northern R. Co. v. Delaware Valley Ry. Co., Inc.*, 1999 WL 463705, at *5–6 (Del. Super. Mar. 30, 1999).

[64] *See id.*

[65] *Id.* at *6 (citing *Smith v. Cohen*, 685 A.2d 268, 269 (R.I. 1996)).

[66] *Id.*

[67] Appellants' Opening Br., D.I. 13, at 5–6.

[68] *Id.* at 6–7.

13

Appellants also contend that the Memorandum cannot retroactively apply to April 5, 2010 because the Lease had already terminated when Gillen failed to fulfill the notice requirement.[69] Moreover, Appellants argue that Gillen never expressly consented to renewing his personal liability under the Lease because he never signed the Memorandum in his individual capacity.[70]

The Court finds that Gillen was a guarantor when he signed the Memorandum because he expressly intended to renew the terms and conditions of the Lease. Under Delaware law, "commercial leases are not governed by the Residential Landlord-Tenant Code and parties to a commercial lease are free to contract however they so desire."[71] Therefore, the Court will "give priority to the parties' intentions as reflected in the four corners of the agreement" and will interpret clear and unambiguous terms according to their plain meaning.[72] Furthermore, Delaware courts have long held that the terms of the contract will be controlling so long as "they establish the parties' common meaning so that a

---

[69] *Id.*

[70] *Id.*

[71] *See* 25 *Del. C.* § 5101(b) ("Any rental agreement for a commercial rental unit . . . shall be governed by general contract principles . . . ."); *Independence Mall, Inc. v. Wahl*, 2012 WL 6945505, at *4 (Del. Super. Dec. 31, 2012) ("Before its 1996 amendments, the Landlord–Tenant Code applied to residential and commercial leases. After 1996, however, commercial rental agreements were separated from Part III, Residential Landlord–Tenant Code.").

[72] *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (citing *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009). *See Motorola, Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008).

14

reasonable person in the position of either party would have no expectations inconsistent with the contract language."[73]

Under these well-established principles, Gillen renewed the Lease by signing the Memorandum. As a result, all of the terms and conditions of the Lease were also renewed. One of the Lease's conditions, as noted by the Lease's signature line, is that Gillen had to sign as a guarantor. Therefore, when Gillen and Shoppes mutually agreed to renew the Lease under the Memorandum, Gillen renewed his obligation as a guarantor as well.

The trial court was correct to find that Gillen's guaranty expired when the Lease expired because Appellants did not provide the required ninety-day written notice. The trial court was also correct to find that the parties expressly intended to renew the Lease when they consummated the Memorandum. Accordingly, the Court will not disturb their contractual freedom to do so.[74] While the Memorandum does not discuss whether Gillen signed in his individual capacity, this is not a case where the individual who signed on behalf of a corporation is different from the person who signed in his or her individual capacity. Gillen signed the Lease and knew all of its terms. When Gillen renewed the Lease under the Memorandum, he was not oblivious to his obligations as a guarantor. Hence,

---

[73] *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (citing *Rhone-Poulenc v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).
[74] *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 (Del. 2015).

15

the trial court did not commit legal error when it found that Gillen was a guarantor when he signed the Memorandum because Gillen expressly intended to renew the Lease and all of its provisions.

## C. The Trial Court's Calculation of Damages Was Clearly Erroneous.

In its complaint, Shoppes sought $26,286.75 in damages from Appellants.[75] However, the trial court awarded $21,984.80 in damages.[76] The trial court arrived at this amount by making the following calculations: "The total charges documented up to August 29, 2013 total $52,018.35. The total payments and deductions total $30,033.55. Therefore, Defendants are jointly and severally liable for the outstanding balance of $21,984.80."[77] The trial court did not include debts owed after August 29, 2013 because the new tenant began paying rent on September 1, 2013.[78]

Appellants argue that the trial court failed to deduct their security deposit of $3,500 and their common area maintenance ("CAM") credit of $655.83.[79] Appellants also argue that the balance forward in the ledger is unsupported by evidence.[80] Specifically, Shoppes presented a ledger at trial with a balance forward of $15,933.55, but Appellants contend that there is no breakdown as to how

[75] *Shoppes of Mount Pleasant, LLC v. J.M.L., Inc.*, 2015 WL 3824118, at *7 (Del. Com. Pl. May 11, 2015).

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] Appellants' Opening Br., D.I. 13, at 12.

[80] *Id.* at 11.

Shoppes arrived at this amount.[81] Therefore, Appellants argue that the trial court abused its discretion when it considered the balance forward in its calculation of damages.

First and foremost, the trial court had substantial evidence to consider the balance forward in its calculation of damages. This factual determination was based upon the testimony of Kubiak and Larson. Specifically, when Kubiak was asked about the balance forward, Kubiak testified that "there were some months [in 2012] that we did not receive any rent payments."[82] Kubiak also testified that the balance forward included other costs, such as CAM charges and taxes, that Appellants did not pay.[83] Furthermore, Larson testified that, in late 2012, Gillen was "having problems keeping up with rent."[84] Based upon this testimony, the trial court had substantial evidence to find that the balance forward within the ledger was accurate.

Nevertheless, the trial court erred in its calculation of damages. Appellants' obligations ended on August 29, 2013 because the new tenant began paying rent in September 2013. As such, the amount owed as of the end of August, per the ledger, is $25,657.55. The trial court failed to deduct Appellants' CAM credit and security deposit, which totals $4,155.85. Therefore, Appellants are jointly and

---

[81] *Id.*
[82] Tr. 45:10-18.
[83] *Id.*
[84] Tr. 76:1-5.

severally liable for the outstanding balance of $21,501.70, plus post-judgment interest at a rate of 6 percent per year until the balance is paid in full.

**D. The Trial Court Did Not Abuse Its Discretion When It Awarded Attorney's Fees to Shoppes.**

Article 14(B) of the Lease provides that "Tenant shall reimburse Landlord for all reasonable legal fees incurred by Landlord" in enforcing any of its provisions.[85] Pursuant to Article 14(B), the trial court awarded $20,132.00 in attorney's fees and $1,933.74 in costs.[86] Appellants argue that the trial court abused its discretion because the awarded damages were disproportionate to the complexity of the case.[87]

The Court finds that the trial court did not abuse its discretion when it awarded attorney's fees to Shoppes. Initially, Shoppes argued to the trial court that it was entitled to $42,412.00 in attorney's fees.[88] In response, the trial court determined that this was unreasonable, and instead awarded the aforementioned amount.[89] The trial court arrived at this conclusion by carefully weighing the factors set forth in Rule 1.5 of The Delaware Lawyers' Rules of Professional Conduct and determining that 32.5 hours billed for post-trial memoranda was

---

[85] Appellants' Ex. 1.
[86] *Shoppes of Mount Pleasant, LLC v. J.M.L., Inc.*, No. CPU4-14-001415, at 9 (Del. Com. Pl. Aug. 4, 2015).
[87] Appellants' Opening Br., D.I. 13, at 13.
[88] *Shoppes of Mount Pleasant*, No. CPU4-14-001415, at 2.
[89] *Id.*

unreasonable.[90] Furthermore, the trial court reduced Shoppes' attorney's fees because Appellants should not be charged for Shoppes' own mistake.[91] Two of Shoppes' witnesses were absent for the trial, and as a result, another trial had to be held at a later date.[92] The trial court determined that Shoppes' attorney should not be able to bill for this additional proceeding because it was an "accommodation" to Shoppes.[93] Because the trial court's reasoning was logical and supported by substantial evidence, the Court will not disturb its finding.

## VI. CONCLUSION

With respect to the Court of Common Pleas' decision that rendered Gillen a personal guarantor, the Court finds that the trial court did not err. The Court also finds that the trial court did not err when it awarded $20,132.00 in attorney's fees and $1,933.74 in costs. However, the trial court erred when it awarded damages to Shoppes because it miscalculated the amount due. Appellants are jointly and severally liable to Shoppes for $21,501.70, plus post-judgment interest at a rate of 6 percent per year until the balance is paid in full. Therefore, the decision of the Court of Common Pleas is hereby **AFFIRMED in part** and **REVERSED in part**.

---

[90] *Id.* at 4.
[91] *Id.* at 5.
[92] *Id.*
[93] *Id.*

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, Judge