# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

KAINOS EVOLVE, INC., )
          )
     Plaintiff and Counterclaim )
                Defendant, )
          )
     v. )     C.A. No. 2018-0712-AGB
          )
INTOUCH TECHNOLOGIES, INC., )
          )
     Defendant and Counterclaim )
                Plaintiff. )

## ORDER DENYING COUNTERCLAIM
## DEFENDANT'S MOTION TO DISMISS

WHEREAS:[1]

A.     InTouch Technologies, Inc. is a provider of technology and related services that enable doctors and hospitals to provide telemedicine services to their patients using virtual care platforms with live audio, instant messages, email, and live video.

---

[1] The facts recited herein come from the Amended Complaint (Dkt. 46), Third Amended Counterclaims (Dkt. 50), and documents incorporated therein. *See Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) (citation and internal quotations omitted) ("[P]laintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms" in connection with a motion to dismiss).

B.      Kainos Evolve Inc. provides digital services and cloud-based platforms in the healthcare industry.

C.      Starting in 2015 and early 2016, Kainos represented to InTouch that it had existing software that could serve as a platform for InTouch's clinical applications (the "Platform"). The Platform allegedly would allow InTouch and its customers to more easily reconfigure and adapt InTouch's telemedicine technology to meet particular requirements of hospitals and their clinical workflows without additional programming.

D.      On March 1, 2016, the parties entered into a License and Partner Agreement (the "Agreement") under which Kainos licensed its Platform to InTouch for a five-year term for $3.2 million.

E.      On November 30, 2017, InTouch provided written notice to Kainos of its intent to terminate the Agreement. InTouch alleges that Kainos materially breached the Agreement because the Platform and associated tools (i) did not operate substantially in accordance with the description of the Platform and (ii) were not timely delivered. InTouch had paid Kainos $693,750 under the Agreement.

F.      On October 2, 2018, Kainos filed its initial complaint, which it amended on May 6, 2019. Kainos seeks to recover approximately $2.5 million, reflecting the remaining balance due under the Agreement.

G.     On May 22, 2019, InTouch filed its Third Amended Answer and Counterclaims, which asserts three claims against Kainos (the "Counterclaim"). Count I asserts that Kainos breached the Agreement by failing to deliver, maintain and/or support the clinical software applications that were contemplated to run on the Platform. Count II asserts that Kainos fraudulently induced InTouch to enter into the Agreement. Count III seeks reformation of the Agreement.

H.     On May 19, 2019, Kainos moved to dismiss Count I in part and Count II in its entirety under Court of Chancery Rules 12(b)(6) and 9(b).

NOW THEREFORE, the court having considered the parties' submissions, IT IS HEREBY ORDERED, this 31st day of December, 2019, as follows:

1.     The standards governing a motion to dismiss under Court of Chancery Rule 12(b)(6) for failure to state a claim for relief are well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[2]

2.     **Liability Limitations**. Kainos contends that any claims for damages in Counts I and II that exceed the liability limitations set forth in Sections 17.2, 17.3,

---

[2] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal citations omitted).

3

19.1, and/or 19.2 of the Agreement should be dismissed. The court **DENIES** this aspect of Kainos' motion to dismiss.

3.      Sections 17.2 and 17.3 purport to limit InTouch's remedies if *Kainos* terminates the Agreement or the "Platform Service" pursuant to those provisions. Kainos alleges, however, that *InTouch* "repudiated" the Agreement and caused it to terminate.[3] At a minimum, there is a factual dispute over who terminated the Agreement that precludes applying any remedy limitations in Sections 17.2 and 17.3 at this stage of the case.

4.      Section 19.1 provides, in relevant part, that "[t]o the maximum extent permitted by law, [each party's] aggregate liability arising out of or related to this Agreement [shall not] exceed the amounts actually paid."[4] Section 19.2 provides, in relevant part, that "[t]o the maximum extent permitted by law, [neither party shall] be liable to anyone for any indirect, punitive, special, exemplary, incidental, consequential or other damages of any type or kind."[5]

---

[3] Am. Compl. ¶ 71 ("InTouch repudiated the Agreement by repeatedly taking the position that the Agreement terminated December 29, 2017 and by refusing to perform under the Agreement."); ¶ 72 ("On February 26, 2018, Kainos provided InTouch with written notice . . . that Kainos was electing to treat InTouch's repudiation of the Agreement as a termination of the Agreement.").

[4] Counterclaim Ex. A (the "Agreement") § 19.1.

[5] *Id.* § 19.2.

4

5. The public policy against fraud may prevent application of the liability limitations in Sections 19.1 and 19.2 with respect to Count II.[6] More generally, in recognition of the fact that it is preferable for the court to have a factual record before ruling out available remedies, particularly when issues of public policy may be implicated, Delaware courts have held that "the enforceability of liability limitations should not be decided on the pleadings or on summary judgment."[7] The court sees no reason to depart here from this approach of declining to decide the enforceability of liability limitation provisions on the pleadings.[8]

6. **Count II.** In Count II, InTouch alleges that Kainos made fraudulent representations that fall into two categories: (i) extra-contractual representations Kainos made before entering into the Agreement and (ii) representations Kainos made in Section 17.2 of the Agreement itself.[9] Apart from seeking relief under the liability limitations in the Agreement, Kainos advances four other arguments in

---

[6] *See ABRY P'rs V, L.P. v. F&W Acq. LLC*, 891 A.2d 1032, 1035-36 (Del. Ch. 2006) ("when a seller intentionally misrepresents a fact embodied in a contract – that is, when a seller lies – public policy will not permit a contractual provision to limit the remedy of the buyer to a capped damage claim. Rather, the buyer is free to press a claim for rescission or for full compensatory damages.").

[7] *Data Ctrs. LLC v. 1743 Hldgs. LLC*, 2015 WL 9464503 (Del. Super. October 27, 2015) (citing *J. A. Jones Constr. Co. v. Dover*, 372 A.2d 540, 553 (Del. Super. Feb. 28, 1977)).

[8] *But see Beals v. Wash. Int'l Inc.*, 386 A.2d 1156, 1159 (Del. Ch. 1978) ("a Court of Chancery has never had jurisdiction to impose punitive or exemplary damages in the absence of specific statutory authority").

[9] Tr. 61 (September 13, 2019) (Dkt. 62) (confirming that Section 17.2 is the only provision in the Agreement containing a statement on which InTouch bases its claim for fraud).

support of its motion to dismiss Count II, two of which apply to the first category of alleged misrepresentations, the third applies to the second category, and the fourth challenges InTouch's request for rescission. For the reasons discussed below, the court **DENIES** each of these aspects of Kainos' motion to dismiss.

7. *First*, Kainos asserts that InTouch's fraud claim concerning Section 17.2 of the Agreement should be dismissed on the theory that it is duplicative of InTouch's claim for breach of Section 17.2 in Count I. Kainos does not challenge InTouch's extra-contractual statements as duplicative—it only challenges as duplicative statements made in Section 17.2 of the Agreement.[10]

8. Kainos contends that a fraud claim alleged contemporaneously with a breach of contract claim may survive only if the fraud claim is based on conduct that is separate and distinct from the conduct constituting the breach.[11] Even if one assumes for the sake of argument that InTouch's contract claim for breach of Section 17.2 and its fraud claim based on statements made in Section 17.2 involved the same conduct, it is quite possible that the measure of damages for the fraud claim would be different given the public policy against fraud.[12] For this reason alone, it would be premature to dismiss the fraud claim insofar as it is based on Section 17.2.

---

[10] Tr. 5.

[11] Pl.'s Opening Br. 24-25 (Dkt. 53).

[12] *See supra* ¶ 5 n.6.

6

9. *Second,* Kainos argues that the court should dismiss the "allegations of fraud in Count II for alleged misrepresentations made prior to the parties entering the Agreement . . . because Sections 17.4 and 32 of the Agreement . . . bar any reliance on oral and extra-contractual representations made prior to the Agreement."[13] The court disagrees.

10. In considering the precedents on which Kainos primarily relies, this court has summarized the relevant legal principles as follows:

> As explained in *Abry,* the Court will not bar a contracting party from asserting claims for fraud based on representations outside the four corners of the agreement unless *that contracting party* unambiguously disclaims reliance on such statements. The language to disclaim such reliance may vary, as the Court noted in *Prairie Capital,* but the disclaimer must come from the point of view of the aggrieved party (or all parties to the contract) to ensure the preclusion of fraud claims for extra-contractual statements under *Abry* and its progeny.[14]

11. Here, the cited provisions of the Agreement, considered collectively, do not contain language that amounts to an unambiguous disclaimer of reliance on

---

[13] Pl.'s Opening Br. 19.

[14] *FdG Logistics LLC v. A & R Logistics Hldgs., Inc.,* 131 A.3d 842, 860 (Del. Ch. 2016) (citing *ABRY,* 891 A.2d at 1041; *Prairie Capital III, L.P. v. Double E Hldg. Corp.,* 132 A.3d 35, 50 (Del. Ch. Nov. 24, 2015)). *See also IAC Search, LLC v. Conversant LLC,* 2016 WL 6995363, at *6 (Del. Ch. Nov. 30, 2016) ("[I]n order to bar fraud claims, a disclaimer of reliance 'must come from the point of view of the aggrieved party,' meaning it must come from the *buyer* who is asserting the fraud claim. An assertion from the *seller* 'of what it was and was not representing and warranting' is not sufficient given the law's abhorrence of fraud.") (quoting *FdG Logistics,* 131 A.3d at 860).

statements outside the Agreement's four corners that comes from the point of view of the "aggrieved party," *i.e.*, the party asserting the fraud claim—InTouch.

12. Section 17.4 provides, in relevant part, that "[*Kainos*] makes no warranties of any kind, whether express, implied, statutory or otherwise, and specifically disclaims all implied warranties."[15] This provision does not come from InTouch's point of view.

13. Section 32 is a standard integration clause. It provides, in relevant part, that the Agreement "constitutes the entire agreement between the Parties, and supersedes all prior and contemporaneous agreements, proposals or representations, written or oral, concerning its subject matter."[16] This type of provision, which "does not contain explicit anti-reliance representations and which is not accompanied by other contractual provisions demonstrating with clarity that [InTouch] had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims."[17]

---

[15] Agreement § 17.4 (emphasis added). By contrast, the agreement in *Harland Clarke Hldg. Corp. v. Milken* 2015 WL 12868204, at *3 (D. Del. Mar. 4, 2015) contained a disclaimer of reliance by all parties to the contract, and the agreement in *Sparton Corp. v. O'Neil*, 2017 WL 3421076, at *4 (Del. Ch. Aug. 9, 2017) contained a disclaimer of reliance on behalf of the aggrieved party.

[16] Agreement § 32.

[17] *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004).

8

14.     *Third*, Kainos argues that InTouch has failed to plead its extra-contractual fraud counterclaim with the requisite particularity.[18] To state a claim for fraud in the inducement, a plaintiff must allege: "(i) a false representation, (ii) the defendant's knowledge of or belief in its falsity or the defendant's reckless indifference to its truth, (iii) the defendant's intention to induce action based on the representation, (iv) reasonable reliance by the plaintiff on the representation, and (v) causally related damages."[19]

15.     Under Court of Chancery Rule 9(b), the circumstances constituting an alleged fraud must be pled with particularity but the second and third elements may be averred generally because they relate to conditions of the mind.[20] Thus, "a plaintiff need only point to factual allegations making it reasonably conceivable that the defendants charged with fraud knew the statement was false."[21]

16.     The particularity requirement "means that a plaintiff must allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim. The relevant circumstances are the time, place, and contents of the

---

[18] Kainos does not challenge for lack of particularity InTouch's fraud claim based on Section 17.2 of the Agreement itself. Tr. 64.

[19] *Prairie Capital III*, 132 A.3d at 49.

[20] *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143 (Del. Ch. 2003).

[21] *LVI Gp. Invs., LLC v. NCM Gp. Hldgs., LLC*, 2017 WL 1174438, at *4 (Del. Ch. Mar. 29, 2017) (internal quotations omitted) (citing *Prairie Capital III*, 132 A.3d at 49).

9

false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[22] "However, Delaware courts have held that lack of specificity as to date, place, and time are not fatal, *provided that* the pleadings put defendants on sufficient notice of the actual misconduct with which they are charged."[23]

17.     Kainos challenges the sufficiency of InTouch's pleading regarding only the first two elements of its extra-contractual fraud counterclaim. In my opinion, InTouch has alleged sufficient details to satisfy these two elements with respect to the statements made in or in connection with two documents Kainos provided to InTouch before they entered into the Agreement: (i) the "Platform Description" document that later was attached to the Agreement as Appendix 1 and (ii) a PowerPoint presentation dated January 16, 2016.[24]

18.     As to the first element, in my view, paragraphs 56 and 57 of the Counterclaim sufficiently describe the time and place of the alleged fraud:

- Paragraph 56 alleges that "as early as January 16, 2016 and extending to the execution of the Agreement, Kainos employees, including Alistair Allen, Gary McCullough, and Richard Barbour represented to InTouch Employees Rich Evans and others that Kainos' Platform was *presently operable substantially in accordance with the Platform Description*" and that the "Platform Description itself was provided to

---

[22] *Prairie Capital III*, 132 A.3d at 62.

[23] *LVI*, 2017 WL 1174438, at *4.

[24] Counterclaim ¶¶ 56-57.

InTouch by Kainos as a representation of the *current operability of the Platform* no later than February 18, 2016." (Emphasis added).

- Paragraph 57 alleges that "Kainos represented in a written PowerPoint representation dated January 16, 2016 [that was] shown to InTouch employees on January 18, 2016 that the 'Evolve Connector Framework' has 'Over 100 hospital system interfaces' that allegedly permit 'Easy Exchange of Data' and 'Ease of Integration.'"

Paragraph 58 of the Counterclaim, furthermore, describes in significant detail the contents of the alleged fraud by identifying aspects of the Platform ("e.g., Drag and Drop Forms, Drag and Drop Workflows, Integration Framework and Admin Utilities") that allegedly "were not fully functional" when the representations in paragraphs 56 and 57 were made.[25] The Counterclaim also is replete with allegations of what Kainos stood to gain from making these representations, *i.e.*, inducing InTouch to enter into an Agreement to pay for a license to a Platform that allegedly did not work.[26]

19. As to the second element, which may be averred generally, it is reasonable to infer that Kainos employees knew or were recklessly indifferent to the fact that the Platform was not "presently operable substantially in accordance with the Platform Description"[27] based on the specific allegations in paragraph 58 that

---

[25] *See also id.* ¶¶ 13, 19.

[26] *See id.* ¶¶ 5, 10, 13, 19, 59-61.

[27] *Id.* ¶ 56.

11

aspects of the Platform either were not functional for about eighteen months after the date of the Agreement or were never functional:

> Many of the Core Services in the Platform Description, e.g., Drag and Drop Forms, Drag and Drop Workflows, Integration Framework and Admin Utilities were not fully functional in the Evolve Platform or available for use by InTouch employees or end users until late fall of 2017. . . . Kainos was still developing drag and drop form and workflow functionality when InTouch provided its notice of material breach and intent to terminate the Agreement in November 2017. . . . A library of interfaces/connectors was not made available up until InTouch provided its notice of material breach and intent to terminate the Agreement."[28]

20. *Fourth*, Kainos asserts that InTouch waived its request for rescission because it "substantially and excessively delayed" in seeking rescission and it "affirmed the Agreement repeatedly" before seeking rescission.[29] It is well established that this court will not dismiss a request for rescission at the pleading stage unless "the circumstances of a challenged transaction make rescission infeasible, and where the plaintiff is not unfairly prejudiced."[30] Kainos does not

---

[28] *Id.* ¶ 58.

[29] Pl.'s Reply Br. 25 (Dkt. 59). Kainos also draws a distinction between the legal and equitable remedies of rescission, yet it "is not challenging that this Court has proper jurisdiction over any of the claims or counterclaims." *Id.* 27 & n.8. As discussed above, the availability of certain legal remedies will be determined at a later stage. This approach is consistent with the well-settled principle that when this court has jurisdiction over a controversy it will decide the entire matter, and give complete relief, including legal remedies, as appropriate. *Wilmont Homes, Inc. v. Weiler*, 202 A.2d 576, 580 (Del.1964).

[30] *Winston v. Mandor*, 710 A.2d 831, 831 (Del. Ch. 1996) (dismissing the plaintiff's request for rescission, and "conclud[ing] that where the circumstances of a challenged transaction

challenge rescission on this ground.  In any event, given the fact-intensive inquiry that must be undertaken to determine if the remedy of rescission would be warranted, the court declines to address the availability of this remedy at this stage.[31]

* * * * *

21.  For the reasons explained above, Kainos' motion to dismiss Count I in part and Count II in its entirety is **DENIED**.

_____<br>Chancellor

---

make rescission infeasible, and where the plaintiff is not unfairly prejudiced, a motion to dismiss that remedy may be granted").

[31] *See Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 26, 2014) ("[W]hether rescission is available properly involves a fact-specific inquiry."); *ENI Hldgs., LLC v. KBR Gp. Hldgs., LLC*, 2013 WL 6186326, at *24 (Del. Ch. Nov. 27, 2013) ("Rescission is not a cause of action but a remedy available only where facts indicate equity so requires. Because such an inquiry is fact specific, I decline to address it in connection with this Motion to Dismiss . . . .") (citation omitted); *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000) ("In response to a motion to dismiss, I simply determine whether plaintiff has stated a claim for which relief might be granted. If I find that plaintiffs have stated cognizable claims, then the nature of that relief is not relevant and need not be addressed. Because the determination of relief is beyond the scope of this motion and premature without an established evidentiary record, I will not address this issue.") (citations and internal quotation marks omitted)).

13